WICHITA FALLS STATE HOSPITAL,
Petitioner,

v.

Deborah D. TAYLOR, Individually and
as Heir of the Estate of Terry
Lynn Taylor, Respondent.

No. 01–0491.

Supreme Court of Texas.

Argued April 3, 2002.

Decided March 6, 2003.

Lisa Royce Eskow, Atty. General's Office, Austin, John Cornyn, United States Senate, Washington, DC, Howard G. Baldwin, First Asst. Atty. Gen. of Tex., Jeffrey S. Boyd, Office of Atty. Gen., Julie Caruthers Parsley, Office of Sol. Gen., S. Ronald Keister, Office of Atty. Gen., William Rich Thompson, II, Office of Atty. Gen., Austin, for Petitioner.

Michael D. Moore, Weatherford, James B. Barlow and Eugene J. Dozier, Barlow & Garsek, Fort Worth, for Respondent.

Justice JEFFERSON delivered the opinion of the Court.

This is an interlocutory appeal in a wrongful-death lawsuit against Wichita Falls State Hospital for violations of the "patient's bill of rights," which is codified at chapter 321 of the Texas Health and Safety Code. We must determine whether

the Legislature intended to waive the State's sovereign immunity by enacting section 321.003 of the Code. We conclude that it did not. Accordingly, we reverse the court of appeals' judgment and dismiss Taylor's claims for want of jurisdiction.

# I

## Background

Terry Lynn Taylor was involuntarily committed to Wichita Falls State Hospital for severe mental illness. Taylor was discharged four days later, after being treated by Dr. Peter Fadow, a psychiatrist at the Hospital. Taylor returned home and committed suicide that same day. Taylor's wife, Deborah Taylor, sued the Hospital and Dr. Fadow under Texas Health and Safety Code section 321.003, asserting claims for wrongful death and survival. TEX. CIV. PRAC. & REM.CODE §§ 71.002, .021. She alleged that Taylor's death was proximately caused by the negligence of the doctor and Hospital in failing to properly diagnose and treat his mental illness, and that the defendants' acts and omissions violated the patient's bill of rights. *See* 25 TEX. ADMIN. CODE §§ 133.42, 404.154–.159.

The Hospital moved to dismiss for want of jurisdiction based on sovereign immuni-ty.[1] In her response, Deborah Taylor argued that the Legislature unambiguously waived the Hospital's immunity by enacting Texas Health and Safety Code section 321.003, which provides that a person who has been harmed by a violation of the patient's bill of rights "may sue" for damages. The trial court denied the Hospital's jurisdictional plea and the Hospital appealed. A divided court of appeals affirmed, holding that the Legislature clearly and unambiguously waived immunity from suit against state mental health facilities for violations of the patient's bill of rights. 48 S.W.3d 782. We granted the Hospital's petition for review to consider this issue of first impression.[2]

# II

## Discussion

### A. *Sovereign Immunity* [3]

In 1847, this Court held that "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. De Young*, 1 Tex. 764, 769 (1847). The Court did not cite the origin of that declaration, but it appears to be rooted in an early understanding of sovereignty:

**1.** Wichita Falls State Hospital was part of the Texas Department of Mental Health and Mental Retardation when the alleged injury occurred and is therefore entitled to assert sovereign immunity. *See* TEX. HEALTH & SAFETY CODE § 532.001(b)(8) (1997), *amended by* Acts 1999, 76th Leg., ch. 543, § 1 eff. June 18, 1999 (Wichita Falls State Hospital and Vernon State Hospital have since merged to create the North Texas State Hospital).

**2.** 45 Tex. Sup.Ct. J. 352 (Feb. 2, 2002).

**3.** Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.1993); *see also* Renna Rhodes, *Principles of Governmental Immunity in Texas: The Texas Government Waives Sovereign Immunity When it Contracts—Or Does It?*, 27 ST. MARY'S L.J. 679, 693–96 (1996).

It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.* This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union.

THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (dismissing fears that adopting the new Constitution would abrogate states' sovereign immunity). Although sometimes associated in the United States with the feudal fiction that "the King can do no wrong," sovereign immunity "is an established principle of jurisprudence in all civilized nations." *Beers v. Arkansas,* 61 U.S. 527, 529, 20 How. 527, 15 L.Ed. 991 (1857).

Most sovereigns have long since abandoned the fiction that governments and their officials can "do no wrong." To varying degrees, states and the federal government have voluntarily relinquished the privilege of absolute immunity by waiving immunity in certain contexts. *See, e.g.,* 28 U.S.C. § 1346(b); TEX. CIV. PRAC. & REM. CODE § 101.021. Invariably, however, they have retained a significant measure of immunity to protect the public treasury. *See Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 417 (Tex.1997) (Enoch, J., dissenting); Elizabeth K. Hocking, *Federal Facility Violations of the Resource Conservation and Recovery Act and the Questionable Role of Sovereign Immunity,* 5 ADMIN. L.J. 203, 211 (1991); Louis L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity,* 77 HARV. L.REV. 1, 1 (1963); Glen A. Majure et al., *The Governmental Immunity Doctrine in Texas—An Analysis*

*and Some Proposed Changes,* 23 Sw. L.J. 341, 341 (1969).

## B. *Waiver of Immunity*

■ Because consent is pivotal to a waiver of sovereign immunity, it is important to consider the manner in which a sovereign conveys its consent to be sued. Under our form of government, the state derives its authority from "the people." *E.g.,* TEX. CONST. art. I, § 2 (stating that "[a]ll political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit"); *see also Alden v. Maine,* 527 U.S. 706, 759, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting that the federal Constitution began "with the principle that sovereignty rests with the people"). In Texas, the people's will is expressed in the Constitution and laws of the State. *See Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 153–54 (1943); *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454, 465–66 (Tex. 1997). Consequently, to waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment.

Courts in other jurisdictions have occasionally abrogated sovereign immunity by judicial decree.[4] We have held, however, that the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 854 (Tex.2002); *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex.1993); *Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980);

---

4. *See, e.g., Evans v. Bd. of County Comm'rs,* 174 Colo. 97, 482 P.2d 968, 972 (1971); *Molitor v. Kaneland Cmty. Unit Dist. No. 302,* 18 Ill.2d 11, 163 N.E.2d 89, 95 (1959); *Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597, 603 (1975); *Pruett v. City of Rosedale,* 421 So.2d 1046, 1052 (Miss.1982); *Bulman v. Hulstrand Constr. Co.,* 521 N.W.2d 632, 639–40 (N.D.1994); *Mayle v. Pa. Dep't of Highways,* 479 Pa. 384, 388 A.2d 709, 709–10 (1978); *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741, 742–43 (1985).

*Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). *But see Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 593 (Tex.2001), (Hecht, J., concurring) (noting that judicial abolition of immunity may be necessary to prompt Legislature to enact reasoned system for determining government's responsibility for its torts). Although we have not absolutely foreclosed the possibility that the judiciary may abrogate immunity by modifying the common law, we have no occasion to consider that possibility today.

When considering immunity in Texas, we address not only whether the State has consented to suit, but also whether the State has accepted liability. *Fed. Sign*, 951 S.W.2d at 405. Immunity from suit prohibits suits against the State unless the State expressly consents to the suit. *Id.* Thus, even if the State acknowledges liability on a claim, immunity from suit bars a remedy until the Legislature consents to suit. *Id.* Immunity from liability protects the State from judgments even after the State has consented to suit. *Id.* Accordingly, even if the Legislature has authorized a claimant to sue, the State's immunity is retained until it acknowledges liability. *Id.* Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999).

It is settled in Texas that for the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity. *Fed. Sign*, 951 S.W.2d at 405; *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex.1994); *Duhart*, 610 S.W.2d at 742. In 2001, the Legislature ratified this approach by adding section 311.034 to the Code Construction Act. That section provides: "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034.

Some statutes leave no doubt about the Legislature's intent to waive immunity. When the Legislature pronounces, for example, that "[s]overeign immunity to ... liability is waived and abolished to the extent of liability created by this chapter," we have had little difficulty recognizing a waiver of immunity from liability.[5] But this case presents no such explicit language waiving immunity from liability. And because the State cannot properly assert immunity from liability in a plea to the jurisdiction, we have no occasion to decide the extent to which immunity from liability is implicated here. *Jones*, 8 S.W.3d at 638.

Similarly, we have little difficulty recognizing the Legislature's intent to waive

---

5. *See, e.g.,* Tex. Gov't Code § 554.0035 ("Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter."); *Id.* § 2007.004(a) ("Sovereign immunity to ... liability is waived and abolished to the extent of liability created by this chapter."); *Id.* § 2007.024(c) ("Sovereign immunity to liability is waived to the extent the governmental entity elects to pay compensation under this subsection."); Tex. Nat. Res.Code § 52.035(c) ("The state waives its right to claim sovereign immunity in any action commenced against the state...."); Tex. Civ. Prac. & Rem.Code § 110.008 ("Subject to Section 110.006, sovereign immunity ... from liability is waived and abolished to the extent of liability created by Section 110.005...."); *Id.* § 101.021 (expressly imposing liability on a

immunity from suit when a statute provides that a state entity may be sued or that "sovereign immunity to suit is waived."[6] This case, however, does not contain the sort of language the Legislature generally uses to confirm its intent to waive immunity from suit. Accordingly, we examine factors we have employed to determine whether a statute that is less explicit may nevertheless waive the State's immunity from suit.

We have on rare occasions found waiver of sovereign immunity absent "magic words," such as the State's "sovereign immunity to suit and liability is waived." Although it is more difficult to discern legislative consent under those circumstances, we have employed several aids to help guide our analysis in determining whether the Legislature has clearly and unambiguously waived sovereign immunity. First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291–92 (Tex.1995). For example, we have found waiver when the provision in question would be meaningless unless immunity were waived. *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex. 2000) (holding that the anti-retaliation

statute had no meaning absent waiver of sovereign immunity).

Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity. *See, e.g., Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 249–50 (Tex.2002); *IT–Davy,* 74 S.W.3d at 853–54; *Guillory,* 845 S.W.2d at 813–14; *Duhart,* 610 S.W.2d at 742–43; *see also Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (1935) (ambiguities in the terms of a legislative grant of a right or a privilege must be construed in favor of the State). In this respect, our methodology resembles that of the United States Supreme Court when it considers a purported waiver of the federal government's sovereign immunity. *See United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) (when confronted with purported waiver of federal government's sovereign immunity, Court will "constru[e] ambiguities in favor of immunity"). If the text and history of the statute leave room to doubt whether the Legislature intended to waive sovereign immunity, we are less likely to find a waiver.

Third, if the Legislature requires that the State be joined in a lawsuit for

---

6. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *Id.* § 63.007(b) ("The state's sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section."); *Id.* § 81.010(d) ("Governmental immunity to suit is waived and abolished only to the extent of the liability created by Subsection (b)."); *Id.* § 101.025(b) ("A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter."); *Id.* § 103.002(a) ("A person may bring a suit against the state under

this chapter, and the state's immunity from suit is waived."); TEX. GOV'T CODE § 2007.004(a) ("Sovereign immunity to suit ... is waived and abolished to the extent of liability created by this chapter."); *Id.* § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter."); TEX. PROP.CODE § 74.506(c) ("The state's immunity from suit without consent is abolished with respect to suits brought under this section."); *see also* TEX. GOV'T CODE § 554.0035 ("A public employee whose employment is suspended or terminated or who is discriminated against in violation of Section 554.002 is entitled to sue ....") *amended by* Acts 1995, 74th Leg., ch. 721, § 3, eff. June 15, 1995.

which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity. *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994) (holding that, "by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorneys fees, the [Declaratory Judgments Act] necessarily waives governmental immunity for such awards").

■■ Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE §§ 101.023–.024; TEX. GOV'T CODE §§ 554.003, 2007.023. Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability. *See IT–Davy,* 74 S.W.3d at 854 (noting that "[s]ubjecting the government to liability may hamper governmental functions by shifting tax resources away from their intended purposes toward defending lawsuits and paying judgments"); *Fed. Sign,* 951 S.W.2d at 413–16 (Hecht, J., concurring) (noting that "even if the Court were to abolish governmental immunity from contract suits, successful plaintiffs still could not be paid without legislative appropriation"); *see also Barfield,* 898 S.W.2d at 297 (stating that the rules for waiver of sovereign immunity apply to both the existence and extent of the waiver).

With these principles in mind, we will examine the statute to determine whether the Legislature waived immunity by adopting section 321 of the patient's bill of rights.

C. *The Patient's Bill of Rights*

In 1993, Texas enacted a patient's bill of rights. TEX. HEALTH & SAFETY CODE § 321.002. Section 321.002 requires that the Texas Department of Mental Health and Mental Retardation and the Texas Commission on Alcohol and Drug Abuse "protect the health, safety, and rights of a patient receiving voluntary or involuntary mental health, chemical dependency, or comprehensive medical rehabilitation services in an inpatient facility." *Id.* § 321.002. Section 321.003 permits a person harmed by a mental health facility's violation of the patient's bill of rights to sue for injunctive relief, damages, or both. *Id.* § 321.003(b). A plaintiff who prevails under section 321.003 may recover actual damages, exemplary damages, and attorney's fees. *Id.* § 321.003(c), (d)

Taylor contends that the Legislature expressly waived the Hospital's sovereign immunity by providing that a patient "may sue" a "mental health facility" for damages and other relief caused by those violations. Section 321.003 provides in part:

(a) A treatment facility or mental health facility that violates a provision of, or a rule adopted under, this chapter ... *is liable* to a person receiving care or treatment in or from the facility who is harmed as a result of the violation.

(b) A person who has been harmed by a violation *may sue* for injunctive relief, damages, or both.

*Id.* § 321.003(a), (b) (emphasis added). Nowhere does this section expressly authorize suit against the State of Texas. Therefore, we must examine whether the statute waives the State's immunity by necessary implication.

■■ Taylor argues that immunity is waived because the term "mental health facility" includes the Texas Department of

Mental Health and Mental Retardation. Taylor acknowledges that the term "mental health facility" is not expressly defined in the statute. She observes, however, that section 321.001—the definitional section of chapter 321—provides that "mental health facility" has the meaning assigned by section 571.003. *See id.* § 321.001(4). Accordingly, we turn to section 571.003 to determine if it contains an unambiguous waiver of sovereign immunity.

Section 571.003, enacted as part of the Texas Mental Health Code two years before chapter 321's enactment, refers expressly to governmental agencies or facilities. Specifically, section 571.003(12) defines "mental health facility" as:

(A) an inpatient or outpatient mental health facility *operated by the department, a federal agency, a political subdivision,* or any person;

(B) a community center or a facility operated by a community center; or

(C) that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided.

*Id.* § 571.003(12)(a)-(c) (emphasis added). "Department" is defined as the Texas Department of Mental Health and Mental Retardation. *Id.* § 571.003(5). Taylor argues that, by incorporating the prior definition of mental health facility into the liability-creating provision of section 321, the Legislature clearly and unambiguously meant to waive the State's immunity from suit.

While the definition of "mental health facility" includes state-operated facilities, it does not contain the sort of explicit language the Legislature generally uses to confirm its intent to waive sovereign immunity.[7] Thus, we must determine whether this incorporated definition is the functional equivalent of an explicit legislative directive waiving the State's immunity.

Lower courts have split on whether section 571.003(12)'s definition, read in conjunction with section 321.003(b), is a "clear and unambiguous" statement of the Legislature's intent to waive sovereign immunity.[8] In refusing to find a waiver of sovereign immunity, one court of appeals noted that, although the statute authorizes actions against private facilities licensed by state health care regulatory agencies, it does not "clearly express an intent to *waive immunity* by authorizing actions against governmental entities." *Tex. Dep't of Mental Health & Mental Retardation v. Lee*, 38 S.W.3d 862, 871 (Tex.App.-Fort Worth 2001, pet. filed). The court applied our decisions in *City of LaPorte v. Barfield* and *Duhart v. State* to hold that mere incorporation of section 571.003's definition of "mental health facility," which includes public facilities, into the patient's bill of rights does not by itself manifest a clear legislative intent to waive immunity. *Lee*, 38 S.W.3d at 870–71; *accord Barfield*, 898 S.W.2d at 295; *Duhart*, 610 S.W.2d at 742.

The court of appeals here, however, followed another court of appeals, which held that " '[b]ecause the [State-operated care

---

7. *See* statutes cited *supra* notes 5 and 6.

8. *See, e.g., Beaumont State Ctr. v. Kozlowski,* 70 S.W.3d 345, 349 (Tex.App.-Beaumont 2002, pet. filed) (holding that section 321.003(b) is a waiver of sovereign immunity); *Cent. Counties Ctr. for Mental Health & Mental Retardation Servs. v. Rodriguez,* 45 S.W.3d 707, 713 (Tex.App.-Austin 2001, pet. filed) (holding that section 321.003(b) is a waiver of sovereign immunity); *Spindletop MHMR v. Doe,* 54 S.W.3d 893, 897 (Tex.App.-Beaumont 2001, pet. filed) (holding that section 321.003(b) is a waiver of sovereign immunity); *Tex. Dep't of Mental Health & Mental Retardation v. Lee,* 38 S.W.3d 862, 871 (Tex.App.-Fort Worth 2001, pet. filed) (holding that section 321.003(b) is not a clear and unambiguous waiver of immunity).

facilities] are mental health facilities as defined in section 571.003, the legislature has consented in section 321.003(b) to their being sued for alleged violations of section 321.003(a).'" 48 S.W.3d at 785 (quoting *Cent. Counties Ctr. for Mental Health & Mental Retardation Servs. v. Rodriguez*, 45 S.W.3d 707, 711 (Tex.App.-Austin 2001, pet. filed)). The court of appeals reasoned that the statutory scheme at issue in *Barfield* was not comparable to chapter 321 because it dealt with incorporation of *subsequently enacted* legislation, while chapter 321's incorporation of "mental health facility" occurred simultaneously with passage of that statute. *Rodriguez*, 45 S.W.3d at 712. Concluding that *Barfield* did not control, the court of appeals held that the Legislature waived sovereign immunity and that any other interpretation would render the statute's language meaningless. *Id.* at 711–12.

The interpretation adopted by the court of appeals in this case, however, overlooks the fact that section 321.003 creates a meaningful cause of action against private mental health care facilities, a claim that remains viable even if suit against the government is barred. As noted above, the fact that the Act remains viable despite the retention of immunity is one indication that the Legislature did not intend to waive immunity by implication. None of the authorities cited by the court of appeals persuades us otherwise.

In *Barfield*, we found a clear and unambiguous waiver of immunity for claims of wrongful discharge against municipalities because the statute had no purpose if immunity had not been waived. 898 S.W.2d at 296–97. Unlike the statute in *Barfield*, the patient's bill of rights undoubtedly applies to private mental health facilities, so it is neither without meaning nor purpose if it is construed against waiver. Indeed, the Act's legislative history indicates that it was designed to curb abuse in private mental health facilities. *See* SENATE COMM. ON HEALTH & HUMAN SERVS., BILL ANALYSIS, Tex. S.B. 205, 73rd Leg., R.S. (1993) (noting that a study of private psychiatric and substance abuse facilities "revealed surprising and somewhat shocking activities taking place in certain *private treatment facilities*") (emphasis added); *see also* TEX. GOV'T CODE § 311.023(1),(3) (in construing statutes, courts may consider the legislative history and the object sought to be obtained). As one court of appeals noted, "[t]here is nothing in the statute's history to suggest that the legislature was even aware of the existence of similar abuse in public facilities." *Lee*, 38 S.W.3d at 871. Thus, the patient's bill of rights achieves its stated objective of regulating private treatment facilities even if suit against the State is barred by sovereign immunity. *Cf. Kerrville*, 28 S.W.3d at 6 (holding that the anti-retaliation statute had no meaning absent waiver of sovereign immunity). Accordingly, the patient's bill of rights does not waive the State's immunity beyond doubt.

Carried to its logical conclusion, Taylor's argument would require us to hold that the Legislature intended to waive immunity not only for the State of Texas, but also for the United States. Section 571.003 includes in its definition of "mental health facilities" hospitals or clinics operated by a *federal* agency. TEX. HEALTH & SAFETY CODE § 571.003(12). Because a state legislature has no authority to waive federal immunity, the Legislature could not have intended a wholesale incorporation of section 571.003 into section 321.001(1). *See* U.S. CONST. art. VI; *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (holding that only Congress can consent to suit against the United States); *see also* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that: (1) compliance with the

constitution of this state and the United States is intended ... ."). Instead, had the Legislature intended state agencies to be included, it would have either stated that intention expressly or incorporated only that part of section 571.003 applicable to state agencies.

At best, the incorporation of section 571.003 into section 321.001 sewed ambiguity into the statute. But in cases like this, we require the Legislature to express its intent beyond doubt and will construe ambiguities in a manner that retains the State's immunity. *See Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935) ("Legislative grants of property, rights, or privileges must be construed strictly in favor of the State ... and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the state."). The statute's ambiguity precludes our finding an unmistakable Legislative intent to waive sovereign immunity.

Another factor we have examined is whether the statute requires the State to be joined in litigation involving the patient's bill of rights. Unlike the statute at issue in *Texas Education Agency v. Leeper*, 893 S.W.2d at 446, which required that the State be sued, nothing in the patient's bill of rights requires joinder of the State or its agencies. *Compare* TEX. CIV. PRAC. & REM.CODE § 37.006, *with* TEX. HEALTH & SAFETY CODE § 321.002. This is yet another

indication that the Legislature did not intend to waive immunity simply by incorporating section 571.003's pre-existing definition of "mental health facility" into the patient's bill of rights.

■ Finally, by examining attributes of waiver that exist when the Legislature expressly waives immunity, we have a reliable guidepost to determine if the Legislature intended to waive immunity when its intent is less clear. In particular, we note that in many statutes waiving sovereign immunity explicitly, the Legislature appends a measure designed to protect the public treasury from the consequences of that waiver.[9] Our decisions recognizing a waiver of immunity have generally left undisturbed the Legislature's interest in protecting the State's financial resources. *See, e.g., Barfield*, 898 S.W.2d at 299 (limiting damages to those authorized by the Texas Tort Claims Act); *Kerrville*, 28 S.W.3d at 9–10 (limiting damages to those authorized by the Texas Tort Claims Act); *Leeper*, 893 S.W.2d at 446 (waiving governmental liability for attorney's fees only).

Unlike the statutes in *Barfield*, *Kerrville*, and *Leeper*, the patient's bill of rights would, under Taylor's construction, subject the State to indeterminate damage awards. The Act expressly permits recovery of actual damages for mental anguish, as well as for exemplary damages and attorneys fees. TEX. HEALTH & SAFETY CODE § 321.003(c), (d). No Texas statute ex-

---

9. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 101.023(a) ("Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property."); *Id.* § 81.010(b) (patient may only obtain an order requiring the governmental unit to discharge the mental health services provider who committed the conduct, court costs, and reason-

able attorney's fees, as determined by the court); TEX. GOV'T CODE § 2007.023 ("The governmental entity is only liable for, invalidation of the governmental action or the part of the governmental action resulting in the taking."); *Id.* § 554.003 ("A public employee may not recover compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in an amount that exceeds ... .").

pressly permits suit against the State for exemplary damages. Although not dispositive, the fact that Taylor's construction of the Act would subject the State to exemplary damage awards reinforces our skepticism that the Legislature intended to waive sovereign immunity by mere implication.

## III

### Conclusion

For the foregoing reasons, we reverse the court of appeals' judgment and dismiss Taylor's claims for want of jurisdiction.