

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-08-00038-CV

**THE CITY OF MIDLOTHIAN, TEXAS,**

                                                                        **Appellant**

 **v.**

**LETHA BLACK,**

                                                                        **Appellee**

_____

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 74216

_____

# O P I N I O N
_____

In this interlocutory appeal of the trial court's denial of the City of Midlothian's (Midlothian) plea to the jurisdiction, we decide if Texas Water Code section 11.086(a) expressly waives governmental immunity for Appellee Letha Black's water code violation claim and then consider her alternative inverse condemnation claim. We hold that Midlothian is immune and that Black's inverse condemnation claim was improperly pled. We will reverse the trial court's ruling and remand the cause for dismissal against Midlothian for want of subject-matter jurisdiction.

**Background**

Black's 11-acre tract of land is located near a large creek in Midlothian. Because Black's property is adjacent to the creek, for many years the natural drainage of the land brought rainwater down and across her property, through a shallow gully that ultimately emptied into the large creek. Due to the rainwater drainage, Black fortified a portion of her driveway that crossed the area where the rainwater naturally drained with concrete and three culverts.

In 2005, 90 Spring Creek, L.P., the co-defendant developer, began construction of Spring Creek, a residential subdivision. Midlothian approved the developer's subdivision plan and made inspections during construction. In connection with the subdivision, the developer constructed a drainage detention pond on private property within the subdivision to hold water collected from the subdivision's storm water drainage system. Midlothian entered into an agreement concerning the drainage detention pond, which gave Midlothian authority to inspect the operation and use of the pond. Black alleged that after the detention pond was built, larger and stronger volumes of water began running over her property during heavy rains, causing erosion and damage to the concrete portion of her driveway. She sued Midlothian, the developer, and the contractor who built the detention pond for damage to her property.

After the trial court denied Midlothian's plea to the jurisdiction, the city appealed. *See* TEX. CIV. PROC. & REM. CODE ANN. § 51.014(a)(8).

**Immunity from Suit**

Midlothian's second issue[1] argues that Black's claim against it under section 11.086 of the Water Code is barred by governmental immunity and that its immunity has not been waived because there is no clear and unambiguous language in the Water Code that evidences legislative intent to waive immunity.

Section 11.086 provides,

(a) No person may divert or impound the natural flow of surface waters in this state . . . in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

TEX. WATER CODE ANN. § 11.086(a)-(b) (Vernon 2008).

In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the State consents to suit.[2] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The sovereign immunity of the State inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except where that immunity has been waived. *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997). Conversely, a municipality has no immunity when it engages in the exercise of

---

[1] In its first issue, Midlothian argues that it was immune from suit under the Texas Tort Claims Act. Because Black has withdrawn her argument on that issue, we do not address it.

[2] The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities. The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts. A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature. *See Ben Bolt-Palito Blanco Cons. I.S.D. v. Texas Political Subdivisions Prop./Cas. Joint Self Insurance Fund*, 212 S.W.3d 320, 324 (Tex. 2004).

proprietary functions.[3]  *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006).  A plaintiff who sues a governmental entity must establish the consent to suit.  *Tex. Nat. Resource Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  Consent to suit must ordinarily be found in a constitutional provision or legislative enactment.  *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003).

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action.  *Texas Dep't Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo.  *IT-Davy*, 74 S.W.3d at 855.  The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction.  *Texas Ass'n Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  If a trial court lacks subject-matter jurisdiction over a claim, the claim must be dismissed.  *Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 803, 808 (Tex. 2002).

Therefore, unless the Legislature has waived Midlothian's governmental immunity from suit for Black's claim that Midlothian violated the Water Code by permitting the developer to construct a detention pond that caused an overflow of surface water on her property, the trial court has no subject-matter jurisdiction over that claim, and we must require the trial court to dismiss it.

It is well-settled in Texas that for the Legislature to waive the State's sovereign immunity, the statute at issue must contain a clear and unambiguous expression of the

---

[3] Midlothian asserts that it was engaged in a governmental function, and Black does not dispute that assertion.

Legislature's waiver of immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 696. The same rule applies to the waiver of immunity for other governmental entities. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995). The rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. *Id.* at 292. Legislative intent remains the polestar of statutory construction. *Id.* If a statute leaves no reasonable doubt of its purpose, we should not require perfect clarity, even in determining whether governmental immunity has been waived. *See id.*

In the absence of a clear and unambiguous waiver of immunity we must, therefore, review the Supreme Court's established guidelines: (1) the statute in question must waive immunity "beyond doubt"; (2) ambiguities are generally resolved in favor of immunity; (3) if the Legislature requires the joinder of a governmental entity in a suit for which immunity would otherwise attach, the Legislature has waived immunity; and (4) if the Legislature simultaneously enacts legislation limiting the governmental unit's potential liability, a waiver of immunity may be found. *Wichita Falls State Hosp.*, 106 S.W.3d at 697-98.

We will now apply these principles to determine whether the Legislature waived Midlothian's governmental immunity from suit by enacting section 11.086.

*Express Waiver*

The Water Code does not contain the type of language that the Legislature generally uses to confirm its intent to waive immunity from suit.[4] However, the Code Construction Act applies to the Water Code and it includes "government or governmental subdivision or agency" in the definition of "person." TEX. WATER CODE ANN. § 1.002 (Vernon 2008); TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 2005).

Citing *Abbott v. City of Princeton*, Black contends that the Legislature expressly waived Midlothian's governmental immunity because the term "person" in subsection 11.086(a) includes municipalities. *See Abbott v. City of Princeton*, 721 S.W.2d 872, 876 (Tex. App.—Dallas 1986, writ ref'd n.r.e). She argues that *Abbott* reaches a clear and unambiguous conclusion that "person" as used in section 11.086 includes a municipality. *Id.* Section 1.002 of the Water Code provides that section 311.005 of the Government Code applies to the Water Code, and that section 311.005 of the Government Code defines "person" to include "government or governmental subdivision or agency." *See* TEX. WATER CODE ANN. § 1.002(a) (Vernon 2000); TEX. GOV'T CODE ANN. § 311.005(2). According to Black, by incorporating the Government Code's definition of person into section 11.086(a), the Legislature clearly and unambiguously meant to waive Midlothian's immunity from suit.

---

[4] *See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2005) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *id.* § 63.007(b) (Vernon Supp. 2008) ("The state's sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section."); *id.* § 81.010(d) (Vernon 2005) ("Governmental immunity to suit is waived and abolished only to the extent of the liability created by Subsection (b)."); TEX. GOV'T CODE ANN. § 2007.004 (Vernon 2000) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter."); TEX. PROP. CODE ANN. § 74.506(c) (Vernon Supp. 2008) ("The state's immunity from suit without consent is abolished with respect to suits brought under this section.").

But, the Supreme Court of Texas has held, that the mere incorporation of a definition from one statute into another that includes both private and governmental entities does not clearly express legislative intent to waive the governmental entities' immunity from suit. *Wichita Falls State Hosp.*, 106 S.W.3d at 699-700; *see also Duhart v. State*, 610 S.W.2d 740, 742-43 (Tex. 1980) (holding that Legislature's incorporation of Workers' Compensation Act provision preserving private employee's cause of action for exemplary damages into statute providing compensation benefits for state highway department employees did not clearly and unambiguously waive State's immunity from suit).

*Ambiguity*

In *Wichita Falls State Hospital v. Taylor*, our supreme court held that the Legislature's authorization of a suit against a "mental health facility" in section 321.003 of the Health and Safety Code (the patient's bill of rights) was not a clear and unambiguous waiver of sovereign immunity. *See Wichita Falls State Hosp.*, 106 S.W.3d at 698-700 (concluding that Legislature did not waive sovereign immunity from suits based on alleged violations of "patient's bill of rights" found in chapter 321 of Health and Safety Code); *accord Tex. Dep't of Mental Health & Mental Retardation v. Lee*, 38 S.W.3d 862, 870-71 (Tex. App.—Fort Worth 2001, pet. denied) (same). "Mental health facility" is not defined in chapter 321 of the Health and Safety Code; instead, the statute incorporates the definition of mental health facility found in section 571.003 of the Health and Safety Code, which includes both private and governmental entities. *See Tex. Health & Safety Code Ann*. § 321.003 (Vernon 2001); *id.* § 321.001(4); *id.* § 571.003(12)

(Vernon Supp. 2008) ("'Mental health facility' means: (A) an inpatient or outpatient mental health facility operated by the [Texas Department of Mental Health and Mental Retardation], a federal agency, a political subdivision, or any person[.]").  Upon concluding that the patient's bill of rights does not waive the State's immunity beyond doubt because the statute achieved its stated objective of regulating private treatment facilities even if suit against the State is barred by immunity, the supreme court held:

> At best, the incorporation of section 571.003 into section 321.001 sewed ambiguity into the statute.  But in cases like this, we require the Legislature to express its intent beyond doubt and will construe ambiguities in a manner that retains the State's immunity. . . . The statute's ambiguity precludes our finding an unmistakable Legislative intent to waive sovereign immunity.

*Wichita Falls State Hosp.*, 106 S.W.3d at 701.

Likewise, the Water Code's incorporation of the definition of "person" from section 311.005 of the Government Code does not waive Midlothian's immunity beyond doubt.  The Water Code's provisions undoubtedly apply to private individuals and entities, so they are not without meaning or purpose if they are construed against waiver.  Moreover, the incorporation of section 311.005 of the Government Code into the Water Code creates an ambiguity.  *See id.*  In such a case, we must construe any ambiguities in a manner that retains Midlothian's immunity.  *See id.*[5]  The Water Code's

---

[5] *See also Magnolia Petro. Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935) ("Legislative grants of property, rights, or privileges must be construed strictly in favor of the state . . . and whatever is not unequivocally granted in clear and explicit terms is withheld.  Any ambiguity or obscurity in the terms of the statute must operate in favor of the state.").  If anything, section 11.086 is even more ambiguous than section 321.003 of the Health and Safety code.  Section 321.003 provides that "[a] . . . mental health facility that violates [the patient's bill of rights found in chapter 321] . . . is liable to a person receiving care or treatment in or from the facility who is harmed as a result of the violation."  TEX. HEALTH & SAFETY CODE ANN. § 321.003(a) (emphasis supplied).  In contrast, section 11.086 merely provides that "no person may divert . . . the natural flow of surface waters . . . in a manner that damages the property of another;" it

ambiguity with regard to the use of "person" precludes our finding "an unmistakable legislative intent to waive immunity." *See id.* at 701.

*Required Joinder*

The third factor we must consider is whether the statute requires the governmental entity to be joined in the lawsuit. *Id.* at 697-98. Nothing in chapter 11 of the Water Code requires the government to be joined in a lawsuit for a Water Code violation arising out of the alleged diversion of surface waters onto a person's property. *See* TEX. WATER CODE ANN. §§ 11.081-.097. The lack of such a requirement is yet another indication that the Legislature did not intend to waive immunity by incorporating the Government Code's definition of person into section 11.086. *Wichita Falls State Hosp.*, 106 S.W.3d at 697-98, 701.

*Limiting Liability*

The final factor we consider is whether the statute provides an objective limitation on the State's potential liability. *Id.* at 698. When the Legislature waives immunity, it generally includes in the statute a measure designed to protect the public treasury from the consequences of the waiver. *Id.* at 701. Chapter 11 of the Water Code contains no such provision. Therefore, the fact that Black's construction of the Water Code would subject Midlothian to indeterminate damages awards without

---

does not state that such a person "is liable" for the diversion. TEX. WATER CODE ANN. § 11.086(a). Both the Health and Safety Code and the Water Code provide that a person who is injured because of a violation of the respective statutes may recover damages. *See* TEX. HEALTH & SAFETY CODE ANN. § 321.003(b); TEX. WATER CODE ANN. § 11.086(b).

limitation reinforces our conclusion that the Legislature did not intend to waive governmental immunity by mere implication. *See id.* at 702.

*Conclusion*

For all of these reasons, we hold that the Legislature's incorporation of the definition of "person" from Government Code section 311.005 into the Water Code does not constitute a clear and unambiguous waiver of immunity from suit for a violation of section 11.086(a).[6] Thus, we sustain Midlothian's second issue.

## Inverse Condemnation Claim

In its third issue, Midlothian complains of the trial court's denial of its plea to the jurisdiction on Black's inverse condemnation claim. Black brought an inverse condemnation claim seeking recovery for damages to her property because she alleges that the excess flooding on her property denied her access, which amounted to a taking. Midlothian contends that Black failed to affirmatively demonstrate that the trial court has jurisdiction over her claims because Black failed to sufficiently allege an inverse condemnation claim under article I, section 17 of the Texas Constitution in her pleadings. Specifically, Midlothian asserts that Black failed to sufficiently allege the element of intent.

---

[6]     We decline to follow *Abbott v. City of Princeton*, 721 S.W.2d 872, 876 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), *disapproved on other grounds by Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 281 (Tex. 2004). *Abbott* did not apply the clear and unambiguous standard adopted by the supreme court. We also note that in *Abbott*, on which Black relies almost exclusively, the court focused on whether the governmental entities at issue were "persons" for purposes of section 11.086 and its predecessor, not specifically on whether the Legislature had waived the entities' sovereign immunity.

There is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims within article I, section 17 of the Texas Constitution also known as the "takings clause." *See* TEX. CONST. art. I, § 17. Therefore, governmental immunity does not shield Midlothian from a properly pled claim for compensation under the state constitutional takings clause. *See* TEX. CONST. art. I, § 17; *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). The takings clause mandates that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX. CONST. art. I, § 17.

Generally, governmental entities compensate property owners before appropriating their property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). If, however, these entities appropriate property without paying adequate compensation, the property owner may recover the resulting damages through an inverse-condemnation claim. *See id.*

An inverse condemnation may occur when a governmental entity physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *See id.* To properly assert an inverse-condemnation claim against a governmental entity, a party must *plead* the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's

property; (3) for public use.  *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Steele v. City of Houston*, 603 S.W.2d 786, 790-91 (Tex. 1980); *see also State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941).

If the plaintiff's petition does not properly plead the elements of an inverse-condemnation claim, then immunity applies and the inverse-condemnation claim must be dismissed for lack of subject-matter jurisdiction.  *See State v. Agnew*, 2006 Tex. App. LEXIS 5096 at *3 (Tex. App.—Corpus Christi June 15, 2006, no pet.).  Whether particular facts are enough to constitute a taking is a question of law.  *See Gen. Servs. Comm'n*, 39 S.W.3d at 598; *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998).

To establish that Midlothian unlawfully "took" or otherwise damaged Black's property, she had to plead that Midlothian (1) knew a specific act (its approval of the detention pond) was causing identifiable harm (rainwater to overflow and damage the concrete portion of Black's driveway); or (2) knew that the specific property damage to Black was substantially certain to result from an authorized government action (approval of the pond) -- that is, that the damage is necessarily an incident to, or necessarily a consequential result of' the government's action.  *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004).[7]  "When damage is merely the accidental

---

[7] In *Jennings*, a home was flooded by the city's efforts to unclog a sewer line.  The parties agreed that an intentional act was required.  The homeowners argued that only the city's *act* need be intentional; the city argued that it must have intended the *damage*.  The supreme court said neither was correct: "if the government knows that specific damage is substantially certain to result from its conduct, then takings liability may arise even when the government did not particularly desire the property to be damaged." *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004).  "There may well be times when a governmental entity is aware that its action will necessarily cause physical damage to certain private property, and yet determines that the benefit to the public outweighs the harm caused to that property.  In such a situation, the property may be "damaged for public use." *Id.*

result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged for public use.'" *Id.* at 313 (quoting *Tex. Highway Dep't v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 71 (1949)).

In reviewing Midlothian's challenge to Black's pleadings, we construe the pleadings liberally in her favor and look to her intent. *See Miranda,* 133 S.W.3d at 226. Black pled that "the acts of Midlothian in evaluating, approving, and inspecting the facility were intentional." She did not plead that Midlothian knew that Black's damage was "necessarily an incident to, or necessarily a consequential result of" Midlothian's action. *See Jennings*, 142 S.W.3d at 314. Her petition contains no allegation that Midlothian knew that the damage was substantially certain to occur. *See id.; see also Agnew*, 2006 Tex. App. LEXIS 5096 at *4. Black has therefore failed to plead a valid inverse condemnation claim.

The Texas Supreme Court has stated that "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity filed its plea to the jurisdiction, and plaintiff's amended petition still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss. *Harris County v. Syke*s, 136 S.W.3d 635, 639 (Tex. 2004).

Black filed her original lawsuit on April 20, 2007, and Midlothian filed its original answer and plea to the jurisdiction, detailing the jurisdictional deficiencies on May 15, 2007. The trial court then allowed Black to file an amended petition, to which Midlothian immediately filed an amended answer. At the hearing on the plea to the jurisdiction, Black's counsel did not request additional time to further amend and stated

that he was satisfied with the pleadings. Thus, the trial court provided Black a reasonable opportunity to amend after Midlothian filed its plea to the jurisdiction, and Black's amended pleading still did not allege facts that would support a claim of inverse condemnation.

We sustain Midlothian's third issue. *See Agnew*, 2006 Tex. App. LEXIS 5096 at *5; *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.).

### Summary

Because the Legislature has not waived Midlothian's immunity from suit for Black's Water Code violation claim, and because Black failed to sufficiently plead a valid inverse condemnation claim, we hold that Midlothian is immune from suit. Accordingly, we reverse the trial court's order denying Midlothian's plea to the jurisdiction and remand the cause to the trial court with instructions to dismiss Black's suit against Midlothian. TEX. R. APP. P. 43.2.

BILL VANCE
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
Reversed and remanded with instructions
Opinion delivered and filed November 5, 2008
[CV06]