July 22, 2009

David L. Lakey, M.D.
Commissioner
Texas Department of State Health Services
Post Office Box 149347
Austin, Texas 78714-9347

Opinion No. GA-0729

Re: Authority of the Department of State Health Services to enforce state asbestos regulations against municipalities (RQ-0775-GA)

Dear Commissioner Lakey:

You ask the following questions regarding the authority of the Texas Department of State Health Services (the "DSHS") to enforce certain provisions of the Texas Asbestos Health Protection Act (the "TAHPA"), chapter 1954 of the Texas Occupations Code, against municipalities:

1. Does the scope of the term "person" in the TAHPA sections 1954.351 and 1954.401 encompass any person not licensed or registered under TAHPA that appears to have violated, is violating, or is threatening to violate the TAHPA or a rule adopted or an order issued under the TAHPA?

2. Is the scope of the term "person" in the TAHPA sections 1954.351 and 1954.401 consistent with the meaning of "person" in the Code Construction Act, such that it encompasses municipalities violating the TAHPA section 1954.259?

3. If a municipality requires permits for renovation or demolition of public or commercial buildings and issues a permit without requiring the applicant to provide evidence acceptable to the municipality that an asbestos survey of all parts of the building affected by the planned renovation or demolition has been completed by a person licensed under the TAHPA to perform the survey, or without requiring a certification as provided by section 1954.259(b)(2), may DSHS pursue enforcement action against that municipality as provided in the TAHPA?

4. Is DSHS authorized to pursue enforcement action against municipalities to collect administrative penalties from them?

> 5. If DSHS is not authorized to pursue enforcement action against municipalities, may the Attorney General or any other entity enforce the TAHPA section 1954.259?[1]

Your questions relate to Occupations Code sections 1954.351, 1954.401, and 1954.259. Request Letter at 5–6. Section 1954.351 provides that "[t]he commissioner may impose an administrative penalty on *a person* who violates this chapter or a rule adopted or order issued under this chapter." TEX. OCC. CODE ANN. § 1954.351 (Vernon 2004) (emphasis added). Section 1954.401 provides, in relevant part, that

> (a) The commissioner may request the attorney general or the district, county, or city attorney having jurisdiction to bring a civil suit for injunctive relief, the assessment and recovery of a civil penalty, or both, against *a person* who:
>
> (1) appears to have violated, is violating, or is threatening to violate this chapter or a rule adopted or order issued under this chapter . . . .

*Id.* § 1954.401(a)(1) (emphasis added); *see also* Request Letter at 3–4 (clarifying that your concern relates to section 1954.401(a)(1)). Section 1954.259(b) provides:

> (b) A municipality that requires a person to obtain a permit before renovating or demolishing a public or commercial building may not issue the permit unless the applicant provides:
>
> (1) evidence acceptable to the municipality that an asbestos survey, as required by this chapter, of all parts of the building affected by the planned renovation or demolition has been completed by a person licensed under this chapter to perform a survey; or
>
> (2) a certification from a licensed engineer or registered architect, stating that:
>
> > (A) the engineer or architect has reviewed the material safety data sheets for the materials used, . . . and any asbestos surveys of the building previously conducted in accordance with this chapter; and

---

[1]*See* Request Letter at 5-6 (*available at* http://www.texasattorneygeneral.gov); TEX. OCC. CODE ANN. §§ 1954.001–.402 (Vernon 2004).

>         (B)   in the engineer's or architect's professional opinion, all parts of the building affected by the planned renovation or demolition do not contain asbestos.

TEX. OCC. CODE ANN. § 1954.259(b) (Vernon 2004); *see also id.* §§ 1954.002(11) (defining "public building"), 1954.259(a) (defining "permit").

We first address your questions regarding the scope of the term "person" in chapter 1954. Prior to its codification, the TAHPA defined the term person to include a governmental subdivision. *See* Act of May 24, 1991, 72d Leg., R.S., ch. 610, § 1, sec. 2(10)(B), 1991 Tex. Gen. Laws 2218, 2219. When the TAHPA was codified in 2001, the Act's definition of the term person was omitted with a revisor's note indicating that the definition was omitted because it was "substantively identical to the definition provided by Section 311.005(2), Government Code (Code Construction Act)." TEX. OCC. CODE ANN. § 1954.002, revisor's note 2 (Vernon Supp. 2008). The Code Construction Act applies to the Occupations Code and expressly includes a governmental subdivision within its definition of the term person. *See* TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 2005); TEX. OCC. CODE ANN. § 1.002 (Vernon 2004) ("Chapter 311, Government Code (Code Construction Act), applies to the construction of each provision in this code except as otherwise expressly provided by this code."). Considering both the source law and the codified law, it is evident that the term person in chapter 1954 includes a governmental subdivision such as a municipality. *See City of Midlothian v. Black*, 271 S.W.3d 791, 796–98 (Tex. App.—Waco 2008, no pet.) (equating "governmental subdivision" with a municipality). Moreover, we find nothing in chapter 1954 that limits the applicability of sections 1954.351 or 1954.401(a)(1)—the enforcement provisions about which you ask—to only a person licensed or registered under chapter 1954.[2] *Compare* TEX. OCC. CODE ANN. §§ 1954.351, .401(a)(1) (Vernon 2004), *with, e.g., id.* § 1954.402(a) (providing expressly that it is applicable to a license holder).

Section 1954.259(b) prohibits a municipality that requires permits for the renovation or demolition of a public or commercial building from issuing such permits unless the municipality receives either evidence acceptable to the municipality that a qualifying asbestos survey has been conducted or certain asbestos-related certifications. *See id.* § 1954.259(b); TEX. GOV'T CODE ANN. § 311.016(5) (Vernon 2005) ("'May not' imposes a prohibition and is synonymous with 'shall not.'"). If a municipality that is subject to section 1954.259(b) were to issue a permit without obtaining the required evidence or certifications it would violate section 1954.259(b). Sections 1954.351 and 1954.401(a)(1) authorize enforcement actions against a person, which term includes a municipality, when the person violates the statute. TEX. OCC. CODE ANN. §§ 1954.351, .401(a)(1) (Vernon 2004). Therefore, we find that the plain language of the statute supports the conclusion that the DSHS commissioner may impose an administrative penalty, and upon the request of the DSHS

---

[2]We note that the provision you are concerned about enforcing—section 1954.259(b)—utilizes both the term "municipality" and "person," arguably suggesting that a municipality is to be treated differently than other persons under section 1954.259(b). Because a municipality is just one of the various entities encompassed within the term person, we conclude that the term municipality is used in section 1954.259(b) for the purpose of clearly identifying the entity to which the section 1954.259(b) mandate applies.

commissioner, the attorney general, or the appropriate district, county or city attorney may pursue enforcement actions against a municipality for failure to comply with section 1954.259(b). However, we caution that while this conclusion addresses the literal questions you ask, it does not address an issue fundamental to the ability to pursue an enforcement action against a municipality—whether chapter 1954 operates to waive a municipality's governmental immunity.

Governmental immunity consists of immunity from suit and immunity from liability. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (explaining immunity from liability bars the enforcement of a judgment against a governmental entity and immunity from suit bars a suit against the entity). Your last three questions are phrased in terms of the ability to pursue enforcement actions against a municipality. Request Letter at 5–6. Thus, we understand those questions to relate to a municipality's *immunity from suit*, which works to bar an action unless consent to suit can be established. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (explaining consent to suit is usually found in a constitutional provision or legislative enactment). Our discussion of immunity is limited accordingly.

"Political subdivisions in Texas have long enjoyed immunity from suit when performing governmental functions[,]"[3] though it was only recently held that municipalities enjoy immunity from suit as to the State itself. *City of Galveston v. State*, 217 S.W.3d 466, 469, 473 (Tex. 2007). There is a "presumption in favor of immunity." *Id.* at 469. Any waiver of immunity must be clear and unambiguous. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2008) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *City of Galveston*, 217 S.W.3d at 469. The fact that the term person under chapter 1954 includes a municipality does not, alone, constitute a clear and unambiguous waiver. *See* TEX. GOV'T CODE ANN. 311.034 (Vernon Supp. 2008) ("use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction"); *see also, e.g., City of Midlothian*, 271 S.W.3d at 796–98 (concluding that incorporation of the definition of person from the Code Construction Act did not waive governmental immunity).

The Texas Supreme Court has identified four factors to consider in determining whether immunity from suit is waived by "necessary implication" when a statute, like the one here, does not explicitly waive immunity.[4] *Taylor*, 106 S.W.3d at 697–98. First, courts consider whether the

---

[3]When a municipality acts in furtherance of purely governmental matters for the interest of the public at large, the municipality performs a governmental function that is afforded governmental immunity. *See Tooke*, 197 S.W.3d at 343. The relevance of the distinction between a governmental and proprietary function outside of the tort context is not altogether clear. *See id.*; Tex. Att'y Gen. Op. No. JC-0114 (1999) at 3. That being said, we assume for purposes of this opinion that a municipality is engaged in a governmental function when it issues a permit but does not comply with the requirements of section 1954.259(b)(2). *Cf., e.g., Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex. App.—San Antonio 1997, no pet.) (explaining that the granting or denial of a building permit is a governmental function).

[4]*See Taylor*, 106 S.W.3d at 696–98 (setting out examples of statutory language that leave a court with little or no doubt as to the Legislature's intent to waive immunity).

statute waives immunity beyond doubt. *Id.* at 697. For instance, courts have found waiver when the statute "would be meaningless unless immunity were waived." *Id.* Second, courts resolve any ambiguities in a statute in favor of retaining immunity. *Id.* Third, in determining whether a statute waives immunity from suit, courts consider whether the statute at issue requires that the governmental entity "be joined in a lawsuit for which immunity would otherwise attach" indicating that "the Legislature has intentionally waived the state's sovereign immunity." *Id.* at 697–98. Fourth, courts consider whether the statute includes measures that provide objective limitations on a governmental unit's potential liability because when waiving immunity, the Legislature often adopts measures to protect public resources from judgment creditors. *Id.* at 698.

Application of the four factors to chapter 1954 suggests that governmental immunity is retained. First, the enforcement provisions of chapter 1954 apply to private parties, so they have both meaning and purpose if governmental immunity is retained. *Cf. id.* at 700 (examining whether section 321.003, Health and Safety Code, was viable and achieved its objective even if suit against a governmental entity was barred). Moreover, the Legislature has expressly provided means, other than suit, by which compliance with section 1954.259(b) may be achieved. *See* TEX. OCC. CODE ANN. § 1954.062 (authorizing the DSHS to develop, distribute, and deliver education and informational materials regarding asbestos). Second, incorporation of the definition of "person" from the Code Construction Act creates an ambiguity because chapter 1954 does not explicitly waive immunity as to a municipality. *Cf. City of Midlothian*, 271 S.W.3d at 798 ("[T]he incorporation of section 311.005 of the Government Code into the Water Code creates an ambiguity."). That ambiguity is to be construed in a manner that retains immunity. *Cf. Taylor*, 106 S.W.3d at 701 (explaining that incorporation of the section 571.003, Health and Safety Code, definition of "mental health facilities" "sewed ambiguity" into section 321.003, Health and Safety Code). Third, nothing in the TAHPA requires a municipality be joined in a lawsuit for a violation arising out of a person's failure to conduct an asbestos survey prior to renovating or demolishing a public or commercial building. *See, e.g.*, TEX. OCC. CODE ANN. §§ 1954.259(b), .351, .401 (Vernon 2004). Finally, although the administrative and civil penalty provisions under the TAHPA are capped at "$10,000 a day for each violation," there are no objective limitations specifically aimed at and designed to protect the public treasury. *Id.* §§ 1954.352(a), .401(b). Thus, we think it unlikely a court would find that including a municipality in the definition of person constitutes a clear and unambiguous waiver of immunity from suit for a violation of section 1954.259(b). To the extent that a municipality enjoys immunity from suit, an enforcement action is barred.

While governmental immunity may bar the pursuit of certain enforcement actions authorized by sections 1954.351 and 1954.401(a)(1), it may not foreclose others. *See, e.g., City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009) ("We conclude that while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions."); *Anderson v. City of McKinney*, 236 S.W.3d 481, 482 (Tex. App.—Dallas 2007, no pet.).

## S U M M A R Y

The term "person" in the Texas Asbestos Health Protection Act, chapter 1954 of the Occupations Code, includes a municipality. However, we think it unlikely that a court would conclude the inclusion of a municipality in the definition of person constitutes a clear and unambiguous waiver of immunity from suit for a violation of section 1954.259(b). Even if governmental immunity is retained, it does not mean that every enforcement action about which you ask is necessarily barred.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee