# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00574-CV

**Robert L. Wynne, D.D.S., Appellant**

**v.**

**Rebecca A. Klein, Timothy Timmerman, Kathleen Hartnett White, Steve K. Balas,
Lori A. Berger, Ida A. Carter, John C. Dickerson III, Thomas Michael Martine,
W.S. "Woody" McCasland, Michael G. McHenry, Linda C. Raun,
Vernon E. "Buddy" Schrader, Richard "Dick" Scott, Franklin Scott Spears, Jr., and
B.R. "Skipper" Wallace, each in their Official Capacity as Members or Former Members
of the Board of Directors of the Lower Colorado River Authority, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-09-004422, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Robert L. Wynne, D.D.S., sued the members of the board of directors of

the Lower Colorado River Authority[1] (collectively, "the Board members") in their official capacities

seeking injunctive and declaratory relief regarding the LCRA's maintenance of the waters of

Lake Travis. The Board members filed a plea to the jurisdiction, asserting that sovereign immunity

barred the suit because Wynne's pleadings did not allege that they had engaged in any ultra vires

acts. The Board members' plea also asserted that Wynne lacked standing to bring the suit. The trial

---

[1]  Rebecca A. Klein, Timothy Timmerman, Kathleen Hartnett White, Steve K. Balas, Lori A. Berger, Ida A. Carter, John C. Dickerson III, Thomas Michael Martine, W.S. "Woody" McCasland, Michael G. McHenry, Linda C. Raun, Vernon E. "Buddy" Schrader, Richard "Dick" Scott, Franklin Scott Spears, Jr., and B.R. "Skipper" Wallace.

court granted the plea to the jurisdiction without specifying the jurisdictional ground on which it relied and dismissed Wynne's claims against the Board members. Wynne appeals. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The LCRA is a conservation and reclamation district created by the State of Texas under the authority of article XVI, section 59(a) of the Texas Constitution. It is a governmental agency and political subdivision of the State, *see* Tex. Spec. Dist. Code Ann. § 8503.001(a) (West 2012); *Hodge v. Lower Colo. River Auth.*, 163 S.W.2d 855, 857 (Tex. Civ. App.—Austin 1942, writ dism'd by agr.), and, as such, enjoys immunity from suit unless the legislature has expressly waived that immunity, *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695-96 (Tex. 2003). Sovereign immunity extends not only to the LCRA itself, but also to its board members acting in their official capacities. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369-70 (Tex. 2009). An exception to sovereign immunity applies when a party alleges that the government officer acted "without legal authority or failed to perform a purely ministerial act." *Id.* at 372. Immunity from suit deprives a court of subject-matter jurisdiction and may be properly asserted in a plea to the jurisdiction. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

Our analysis of whether Wynne's suit is within the trial court's jurisdiction begins with his live pleadings. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause—in this case, allegations of ultra vires acts by the Board members. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.

2

1993)).  When, as here, the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts.  *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) (citing *Miranda*, 133 S.W.3d at 226).  Whether the plaintiff has met his burden is a question of law, which we review de novo.  *Id.*  We construe the pleadings liberally, taking them as true, and look to the pleader's intent.  *Id.*  If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend.  *Id.* at 226-27.  If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to replead.  *Id.* at 227.

**DISCUSSION**

In his third amended petition, his live pleading in this case, Wynne alleged that the Board members conducted activities that caused Lake Travis to be substantially drained during 2008 and for most of the years 2009 through 2011.  Wynne contends that the Board members' activities in this regard exceeded their constitutional authority as set forth in article XVI, section 59(a) of the Texas Constitution, which Wynne asserts mandates that the LCRA "conserve and reclaim the State's water."  The Board members' activities that Wynne contends are beyond the scope of their constitutional authority are (1) owning or operating gas or coal-fired electrical generating plants, an activity he alleges "demands and consumes water from Lake Travis"; (2) selling water to the South Texas Nuclear Project; (3) selling water downstream of Lake Travis for non-irrigation purposes; and (4) permitting too much water from the Colorado River to flow into

3

Matagorda Bay and its estuaries. We examine whether any of these activities exceeds the authority vested in the LCRA by the Texas Constitution.[2]

Article XVI, section 59(a) of the Texas Constitution provides:

> The conservation and development of all of the natural resources of this State, and development of parks and recreational facilities, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing drainage, the conservation and development of its forests, water and hydroelectric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

Tex. Const. art. XVI, § 59(a). In construing a provision of the Texas Constitution, it is our duty to ascertain and give effect to the plain intent and language of its framers and of the people who adopted it. *Gragg v. Cayuga Indep. Sch. Dist.*, 539 S.W.2d 861, 865-66 (Tex. 1976) (citing *Deason v. Orange Cnty. Water Control & Improvement Dist. No. 1*, 244 S.W.2d 981, 984 (1952)). Section 59(a) specifies the purposes for which water control and improvement districts may be organized. One of those expressly stated purposes is "development" of the waters of the State's rivers and

---

[2] The Board members argue that the legislative act creating the LCRA clearly permits the activities of which Wynne complains. *See* Tex. Spec. Dist. Code Ann. §§ 8503.001-.031 (West 2012). In response, Wynne contends the constitutional provision authorizing the creation of conservation and reclamation districts and setting forth their purposes and duties—not the statute creating the LCRA—establishes the outer boundaries of the activities the Board members may engage in. *See Deason v. Orange Cnty. Water Control & Improvement Dist. No. 1*, 244 S.W.2d 981, 984 (Tex. 1952) (constitutional amendments specify circumstances and purposes for which water control and improvement districts may be organized, and legislature is without power to add to or withdraw from those specified circumstances and purposes). Because we conclude that the complained-of activities of the Board members fall within the scope of activities authorized by the relevant constitutional provision, we do not address the role played by the LCRA's enabling act.

streams for "power." The term "development" is defined as "to bring out the capabilities or possibilities of; bring to a more advanced or effective state," Random House Dictionary of the English Language 543 (2d ed. 1987), and more specifically with respect to natural resources "to make actually available or useable (something previously only potentially available or useable) <~*ing* the natural resources of the region>," Webster's Third New Int'l Dictionary 618 (2002). Thus, a plain reading of the provision contemplates that a conservation and reclamation district such as the LCRA may use the State's waters to aid, promote, or facilitate the generation of power. While Wynne contends that the term "power" should be read to be limited to hydroelectric power, the provision itself contains no such limitation. Moreover, production of power by means other than hydroelectric generation falls squarely within the expressly permitted "other useful purposes" to which the State's water may be put—i.e., providing power for use by the State's citizens.

Similarly, selling water to the South Texas Nuclear Project falls within the scope of developing water for use in the generation of power. And it, too, constitutes the use of the State's water for a "useful purpose." While Wynne alleges in his petition that the Texas Constitution does not permit the LCRA to "sell" anything, section 59(a) expressly permits the water to be "developed" for "all other useful purposes." So long as the use to which the water is put by the purchaser is a "useful purpose," we believe the sale of water itself falls within the scope of the LCRA's permitted activities. Indeed, we note that the very justiciable interest Wynne relies on to support his claim to have standing to bring this suit is predicated in part on the LCRA's ability to sell water to the

Windermere Oaks Water Supply Corporation, which in turn provides Wynne and his neighbors with their household water—another useful purpose.[3]

The same analysis applies to Wynne's complaint about the LCRA's sale of water downstream of Lake Travis for non-irrigation purposes.[4] Wynne asserts that voluntary sales of water to downstream users for other than irrigation purposes are not permitted because they amount to the sale of water "to generate revenue for the LCRA," and that the Board members' "pursuit of revenues for the LCRA does not justify selling water for other than the constitutionally permitted irrigation." However, as is true of the LCRA's sale of water to the water-supply corporation that services Wynne's own neighborhood, the mere fact that a sale also generates revenue for the LCRA does not render it beyond the scope of activities permitted by the Texas Constitution so long as the water is put to a useful purpose, whether it be for irrigation or something else.

The final activity that Wynne alleges is ultra vires is that "[o]ver the life of the LCRA, the Colorado River has outflowed into Matagorda Bay an average volume of water that is well over the levels that are appropriate to sustain the ecology of the Bay and its related wildlife." Wynne contends that the "outflow has consistently exceeded the targeted needs of Matagorda Bay" and that the alleged waste "could be reduced, if not eliminated, if the Defendants used some of the LCRA's massive revenues to construct reservoirs near the coast to build and conserve, rather than waste,

---

[3] In his briefing to this Court, Wynne asserts that the LCRA has not "denied that their own rationing to the water supply corporation is what triggers the limits the water supply corporation in turn imposes" on him. He also states that "the water supply corporation at Windermere Oaks, where Appellant lives, gets the water it supplies to Appellant's home from the LCRA."

[4] Wynne's live pleading alleges that "[i]t is obvious that non-irrigation, historically unintended, uses are being made of much of the water the LCRA is supposedly using for irrigation."

reserves." In his brief, Wynne argues that the amount of water flowing into Matagorda Bay constitutes "waste" because the LCRA's own Water Management Plan states that critical inflow needs of the bay and its estuaries is 171,120 acre-feet of water per year and it commits to meet that level in every year, regardless of the January 1 combined storage levels of Lake Travis and Lake Buchanan. In years in which the combined storage levels are at 1.7 million acre-feet of water on January 1, the Water Management Plan provides that the LCRA will commit to flowing "target inflow needs" of 1.03 million acre-feet of water per year into the bay and estuaries. According to Wynne, flowing more than the "critical inflow"—or "target flow"—constitutes a waste of that water and is, therefore, an ultra vires act. We disagree.

To fall within the ultra vires exception to sovereign immunity, a suit must not complain of a government officer's exercise of discretion but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. The targeted volumes in its Water Management Plan are the volumes the LCRA has committed to send downstream, presumably based on an evaluation of what is required to sustain the wildlife and ecology of Matagorda Bay and its estuaries. We disagree that providing more water than is critically necessary to sustain the bay and estuaries, or even exceeding the maximum outflow levels that the LCRA has committed to in years of greater water supply, necessarily constitutes waste. The Board members' determination of whether to exceed those minimum targets, and if so by how much, is plainly a matter of discretion. While the Board members may not have the discretion to cause the LCRA to refuse to supply at least the critical amounts of water needed to sustain the bay and estuaries, there is no constitutional or statutory

7

prohibition against their allowing more than the bare minimum to flow into them. Instead, it is within the Board members' discretion to decide how much water to permit to flow downstream.

We conclude that none of the Board members' activities Wynne complains of in his petition constitutes an ultra vires act. The activities related to the operation of power plants, the sale of water to the South Texas Nuclear Plant, and the sale of water to downstream users for non-irrigation purposes are permitted by article XVI, section 59(a) of the Texas Constitution and consequently are not ultra vires. The decision to allow greater volumes of water to flow into Matagorda Bay and its estuaries than the amount the LCRA has committed to in its Water Management Plan involves an exercise of the Board members' discretion and does not, therefore, fall within the ultra vires exception. Consequently, we hold that sovereign immunity bars Wynne's claims against the Board members. Having so concluded, we need not address the separate ground the Board members urged in their plea to the jurisdiction—i.e., that Wynne lacks standing to bring his claims. *See* Tex. R. App. P. 47.1. Because the trial court properly concluded it did not have subject-matter jurisdiction over Wynne's claims against the Board members, it did not err in granting the Board members' plea to the jurisdiction.

## CONCLUSION

We affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   October 31, 2012

9