# Supreme Court of Texas

No. 22-0291

Texas State University,

*Petitioner*,

v.

Hannah R. Tanner,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued November 29, 2023**

JUSTICE YOUNG delivered the opinion of the Court.

A plaintiff timely brings suit by filing an original petition and serving the defendant with process before the statute of limitations expires. Hannah Tanner satisfied the first requirement with only a week to spare, but she did not serve Texas State University until several years after limitations had run. Under this Court's precedent, however, late service of process can relate back to the date the petition was filed and thus be considered timely. This relation-back opportunity is available only if the plaintiff shows that she was diligent in attempting service from the time limitations expired until proper service was finally achieved.

The University contends that Tanner cannot establish her diligence in service and that her lawsuit against it is therefore barred by limitations. Defendants typically raise limitations as an affirmative defense that, if proven, will lead to a take-nothing judgment on the merits. The University, however, claims that Tanner's suit should be dismissed for lack of jurisdiction before any merits proceedings even commence. Dismissal is the proper disposition, it says, because the University is a governmental entity, and in Texas, plaintiffs bear a *jurisdictional* duty to discharge all "[s]tatutory prerequisites to a suit" against governmental entities. *See* Tex. Gov't Code § 311.034. The University argues that service of process is such a prerequisite and that Tanner did not satisfy it.

We must therefore decide whether a plea to the jurisdiction is a proper vehicle for the University to challenge the timeliness of Tanner's service. We conclude that it is. As this Court has held, § 311.034 requires that a suit against a governmental entity be brought before the limitations period expires. Timely service of process is part of timely bringing suit. Tanner's diligence in attempting service during the years following the expiration of limitations would conclusively establish that her lawsuit was timely, which would defeat the University's limitations objection. Because jurisdiction depends on bringing suit within limitations, and because the statute of limitations requires timely service, the University properly filed a plea to the jurisdiction.

We decline, however, to determine whether the district court properly granted the plea. The court of appeals did not reach that question because it concluded that untimely service does not pose a

2

jurisdictional issue that a plea to the jurisdiction can resolve. The University's alternative motion for summary judgment relied on the same arguments about timeliness, but the court of appeals held, for procedural reasons, that the motion was not part of the appeal. Rather than resolve the timeliness of Tanner's suit in the first instance, we reverse the court of appeals' judgment and remand the case for that court to do so.

**I**

The relevant facts are largely undisputed, and we view them in the light most favorable to Tanner, the nonmovant. Tanner was injured on October 4, 2014, when she was thrown from a golf cart on the Texas State University campus. Dakota Scott, a friend of Tanner's and a University employee, had been driving the golf cart within the scope of his employment. Invoking the Texas Tort Claims Act, Tanner sued the University, the Texas State University System, and Scott. She filed suit on September 29, 2016—less than a week before the two-year limitations period for personal-injury actions was set to expire. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a).

Shortly thereafter—on October 4—Tanner served the System. Her petition expressly states that she did *not* request service on the University or Scott. Later that month, the System filed an answer and a plea to the jurisdiction. In late November, the System disclosed in its interrogatory responses to Tanner that it "is a separate entity and governmental unit from each of its component institutions" and that Scott had "never been employed by the Texas State University System." Nearly two years later, on September 18, 2018, Tanner served Scott— but she still did not serve the University. On December 3, 2018, the

district court granted the System's plea to the jurisdiction. Tanner did not appeal that ruling.

On May 20, 2020—five-and-a-half years after the injury and three-and-a-half years after limitations had run—Tanner finally served the University. The University answered and asserted the affirmative defense that Tanner's claims were "barred by the two-year Statute of Limitations, pursuant to Section 16.003 of the Texas Civil Practice and Remedies Code." On October 2, 2020, the University filed a plea to the jurisdiction and an alternative motion for summary judgment, alleging that Tanner failed to use diligence in effecting service on the University so long after limitations had expired. The University argued that Tanner's untimely service meant that she had failed to satisfy a statutory prerequisite to suit, which deprived the trial court of subject-matter jurisdiction under § 311.034 of the Government Code. In the alternative, the University argued that Tanner's "cause of action should be dismissed in its entirety as a matter of law by summary judgment as [the University's] defense of limitations has been conclusively established."

Tanner responded that the plea should be denied. She argued first that service comes *after* filing suit and thus is not jurisdictional. She then contended that the suit against Scott was in substance a suit against the University; she reasoned that if the suit against Scott was timely (and for purposes of this appeal, we assume that it was), then limitations could not bar the suit against the University. Next, she argued that Scott and the University were represented by the same counsel, so the failure to serve the University caused no prejudice, or at least that the common representation presents a fact issue about her diligence. Finally, she

4

claimed that the University's delay in substituting itself for Scott under § 101.106(f) of the Tort Claims Act would deny Tanner her right to a trial if the suit against the University can be dismissed. The trial court granted the University's plea to the jurisdiction without ruling on the summary-judgment motion. Because of several severance orders, this case comes to us with the University as the only defendant in this suit.

The Third Court of Appeals reversed. 644 S.W.3d 747 (Tex. App.—Austin 2022). It principally relied on this Court's decision in *Prairie View A&M University v. Chatha*, 381 S.W.3d 500 (Tex. 2012), which explains how to determine whether a requirement counts as a "[s]tatutory prerequisite[] to a suit" under § 311.034. As the court of appeals put it, *Chatha* directs courts to conduct this inquiry "by using a three-prong test," which the court recounted as follows:

> First, "to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language." "Second, the prerequisite must be a requirement." Third, "the term 'pre' indicates the requirement must be met before the lawsuit is filed."

644 S.W.3d at 751 (citations omitted) (quoting *Chatha*, 381 S.W.3d at 512).

According to the court of appeals, the "diligent-service requirement" fails all three "prongs." It found "the first two prongs of the *Chatha* test" unsatisfied because the diligence requirement "'is not found in the relevant statutory language' of section 16.003(a) and it is not a 'requirement' of that statute." *Id.* at 752 (quoting *Chatha*, 381 S.W.3d at 512). Indeed, the court of appeals observed, "the text of the personal-injury statute of limitations in section 16.003(a) neither references nor requires diligent service," which the court found unsurprising given that any role for diligence is "a creation of the judiciary." *Id.* Nor can the third

5

prong be satisfied, the court held, because a "prerequisite . . . is to be complied with *prior* to filing suit." *Id.* (emphasis added) (quoting *Chatha*, 381 S.W.3d at 514–15). Diligence in service necessarily measures actions that *follow* rather than *precede* filing, so the court concluded that diligence could not be a statutory "prerequisite" to suit. *Id.*

The court of appeals therefore held that untimely service does not implicate jurisdiction under § 311.034, which in turn means that governmental entities cannot challenge untimely service through a plea to the jurisdiction. *Id.* at 752–53. The court therefore reversed the district court's judgment. It did not address whether Tanner's service was untimely under the University's alternative motion for summary judgment. That motion, the court concluded, had yet to be ruled on by the district court and thus was not part of the appeal. *Id.* at 753 n.2.

The University filed a petition for review, which we granted.

## II

We disagree with the court of appeals' conclusion.

## A

First, the court analyzed the wrong question. There is no freestanding "diligent-service requirement"—there is only a requirement of *timely* service. Diligence in attempting service prevents the running of limitations for as long as a plaintiff truly labors to achieve service of process. "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007); *accord Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009). Diligence for its own sake, in other words, is immaterial. Rather, exercising diligence is merely a means to the end of establishing

6

timely service, the absence of which can doom a plaintiff's claim.

As the court of appeals correctly noted, the diligence gloss on the service requirement came from the judiciary. Timely filing a lawsuit is often far easier than timely effecting service. Tracking down and serving individuals sometimes can seem almost impossible. People can hide, be absent, or just be hard to find. Likewise, effecting service requires steps that are not within a plaintiff's control, such as obtaining citation that is issued by a clerk's office. It would be unduly harsh and create perverse incentives to deem a lawsuit untimely if a plaintiff does everything she can to properly serve a defendant when, purposefully or otherwise, the defendant or third parties make that service extremely difficult.

The common law thus developed a sensible balance, not to undermine but to effectuate the service requirement. Treating untimely service as timely so long as the plaintiff exercises genuine diligence avoids improper outcomes. It benefits only plaintiffs who are truly diligent once limitations expires. It offers nothing for a plaintiff who is dilatory. And while defendants have no duty to make service easy, the diligence rule avoids rewarding efforts to make service hard. This use of diligence as a proxy for timeliness has proven sound and become engrafted into the law of service because it delays limitations when it ought to (when service is unusually hard, despite earnest efforts) and will not do so when it ought not to (when timely service would have been simple or is pursued with indolence).

After all, diligence means truly trying to achieve service—as if one *wanted* to do it, not merely *had* to do it. This principle is familiar in the law. *Cf. Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 189 (Tex. 2022) ("The

means employed [to provide notice when required to satisfy due process] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950))). "In assessing diligence," we have explained, "the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Proulx*, 235 S.W.3d at 216. This necessarily fact-intensive inquiry is "determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Id.* That some time has elapsed between service efforts does not alone prove a lack of diligence. But any delay in service after limitations has run requires an explanation—and not a conclusory or cursory one, either. "[T]he plaintiff's explanation of its service efforts," therefore, "may demonstrate a lack of due diligence as a matter of law, as when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* (citing *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990)).

The diligence exception is thus available to any plaintiff who sues any defendant, but its practical value will vary greatly. It is common sense, for example, that a delay is more likely to occur and be excused when a plaintiff must serve a peripatetic or concealed defendant. Despite that plaintiff's diligence, it may take an extended time to comply with the formalities of service or, if unavoidable, to obtain a substitute method of service. Said differently, the easier it is to achieve service, the harder it will be for a plaintiff to establish diligence during a substantial (or even

8

minor) delay.

Central to this entire discussion is that it is always *service* that matters. Diligence has no separate role other than to inform the assessment of service. The court of appeals started on the wrong path by treating diligence as a distinct "requirement."

**B**

Second, despite the court of appeals' mistaken focus on diligence as a "requirement," we would still affirm its judgment if we agreed that service of process is not a "prerequisite." Service comes *after* filing and alerts the defendant to what has been filed; one could hardly expect it to be done *before* filing. But as we explained at the outset, a plaintiff must do more than file within two years to comply with the statute of limitations. "Bring suit," not "file suit," is the relevant statutory term:

> [A] person must *bring suit* for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer *not later than two years after the day the cause of action accrues*.

Tex. Civ. Prac. & Rem. Code § 16.003(a) (emphasis added).

As the court of appeals noted, *Chatha*'s "third prong" included the phrase "before the *lawsuit is filed*." 644 S.W.3d at 751–52 (emphasis added) (quoting and applying *Chatha*, 381 S.W.3d at 512). That phrase was not inaccurate, but it was incomplete; an event that occurs before filing also occurs before service, of course, and thus before suit is "brought." The requirement at issue in *Chatha* (filing an administrative complaint within 180 days of an allegedly unlawful employment practice) preceded both, so nothing turned on any distinction between "bringing"

9

and "filing." 381 S.W.3d at 503. This case, by contrast, implicates that distinction, and so we clarify that the statute's use of "bring suit" is the touchstone of our analysis. *Chatha* did not purport to replace the statutory text or supplant the existing distinction between "bringing" and "filing."

We explained that distinction, for example, in *Proulx*—another case arising in the context of § 16.003—as follows:

> A *suit* for personal injuries must be *brought* within two years from the time the cause of action accrues. But a timely *filed* suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and *service of citation*.

235 S.W.3d at 215 (emphasis added) (citation omitted). In other words, to "bring suit" is a term of art reflecting the traditional requirements to satisfy a statute of limitations: filing the petition *and* achieving service of process. Timeliness for just one will not do. Thus, while service follows filing, both are prerequisites to "bringing" the suit. The suit is not "brought," and the statute of limitations is not satisfied, until the plaintiff achieves *both* steps.

## C

Even though service is a "prerequisite" to bringing suit, the court of appeals' judgment would still be correct if service is not the *kind* of prerequisite that falls within § 311.034's scope. As the statute states, as *Chatha* confirms, and as the court of appeals correctly held, § 311.034 applies only to "*[s]tatutory* prerequisites to a suit." Prerequisites not mandated by a statute are not jurisdictional (at least, not under § 311.034). We cannot agree, however, that service falls outside that category.

10

This Court has at least twice observed that statutes of limitations impose a jurisdictional requirement for suits against governmental entities. In *Chatha*, we said that when a statutory prerequisite to suit is not met, "whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit)," the suit may be properly dismissed for lack of jurisdiction. 381 S.W.3d at 515. True, as we noted above, "timely filing a lawsuit" (or "bringing" one) was not at issue in *Chatha*. But even if the phrase in *Chatha* were dicta, our holding in *City of Madisonville v. Sims*, 620 S.W.3d 375 (Tex. 2020), confirms its accuracy. The plaintiff there had filed a Whistleblower Act claim against the City of Madisonville and its police department. *Id.* at 377. The City filed a plea to the jurisdiction claiming that the suit, filed after the Act's ninety-day deadline, was barred by limitations. *Id.* at 378. The trial court granted the plea, but the court of appeals reversed and held that the filing deadline was not jurisdictional. *Id.* We reversed and dismissed the case for lack of jurisdiction, holding that the deadline was jurisdictional under § 311.034. *Id.* at 380. Citing *Chatha*, we concluded that the plaintiff's failure to timely file his lawsuit constituted failure to satisfy a statutory prerequisite to suit and that, because the City was a governmental entity, it was entitled to dismissal for lack of jurisdiction under § 311.034. *Id.* Timely service, as we have explained, is no less mandated by the statute of limitations than timely filing.

Tanner seeks to evade *City of Madisonville* (and that case's embrace of *Chatha*) by making a novel argument: that the only statute that counts for § 311.034's purposes is the very statute that waives immunity. The Whistleblower Act *both* waived immunity *and* imposed

11

the ninety-day deadline, she notes, whereas here, the Tort Claims Act waives immunity, and a separate section of the Civil Practice and Remedies Code imposes the two-year limitations period. *City of Madisonville*, she says, is therefore distinguishable.

The court of appeals did not embrace Tanner's novel contention. We disagree with that court's conclusion that § 16.003 did not create statutory prerequisites to a Tort Claims Act suit, but we agree with the premise of its analysis, which was that § 16.003 *could* do so. We reject Tanner's argument that would confine § 311.034's scope to statutory prerequisites that are codified in the same statute as the principal waiver of immunity.

Section 311.034's text contains no such restriction, and neither *Chatha* nor *City of Madisonville* turned on where the legislature chose to codify a given statutory requirement. Without limitation, § 311.034 provides that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." In *Chatha*, we noted that "it is of obvious mention that in order to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language." 381 S.W.3d at 511–12. "Relevant statutory language" means the text of a statute—any statute—that dictates a pre-suit requirement that applies to a given case. We find no ambiguity in § 311.034's text, but even if we did, "we generally resolve ambiguities by retaining immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

Multiple statutes or statutory provisions, after all, may operate in tandem to determine the scope of the waiver of immunity, which in turn

12

will determine whether courts have jurisdiction over a claim against a governmental entity. *See, e.g.*, *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865–66 (Tex. 2023) (examining the Tort Claims Act's waiver of immunity in connection with several subsections that withdraw that waiver); *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 287 (Tex. 2022) ("[I]ncorporating [an]other statute's additional limitations of liability 'modifies a governmental unit's waiver of immunity from suit.'" (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004))). The whole point of § 311.034 is to require courts to treat *any* statutory prerequisite to suit—whether in the statute that directly waives immunity or in any other statute—as jurisdictional. As always, plaintiffs cannot invoke the judicial power unless they comply with *every* jurisdictional requirement.

Tanner's fallback argument is that "[w]hile technically a statute, the statute of limitations has never been viewed as jurisdictional and has always been treated as an affirmative defense to a common law claim."[1] That statement is correct as far as it goes. In ordinary litigation, the statute of limitations does not implicate jurisdiction. That principle also

---

[1] Tanner argues that courts should not treat statutory requirements applicable to *common-law* claims against the government (like statutes of limitations) as "statutory prerequisites," in contrast with the same requirements for claims created by a statute. We see no material distinction. No claim against a governmental entity can be authorized only by the common law because, "to waive immunity, consent to suit must ordinarily be found in a constitutional provision or legislative enactment." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003). Immunity is not waived at all without such an enactment. Thus, even for her personal-injury claim based on common-law concepts and reliant on common-law doctrines, it is by force of statute, not the common law alone, that she may bring suit against the government. *See id.* at 696.

applied to litigation involving the government—until the enactment of § 311.034. *That* provision is what transforms any ordinary statute of limitations into a jurisdictional bar, whether codified directly in the Tort Claims Act or elsewhere. Statutes of limitations are always far more than "technically a statute"—they are *the* statutes delineating the time within which any plaintiff's claim may be pressed, and they now bear jurisdictional force in suits against governmental entities.

\* \* \*

We accordingly hold that the statute of limitations, including the requirement of timely service, is jurisdictional in suits against governmental entities. The University's plea to the jurisdiction was therefore a proper vehicle to address Tanner's alleged failure to exercise diligence in serving the University.

**III**

Having established that the University's plea to the jurisdiction properly raised the issue of limitations, we turn to whether the University established its entitlement to dismissal as a matter of law.

Tanner argues that the University has failed to meet its burden to conclusively prove that she did not satisfy the statute of limitations. This contention misplaces the burden. The University has shown that Tanner did not provide service for 43 months after limitations expired, so the burden has shifted to Tanner to establish timely service in some other way, such as by proving her diligence. *See Proulx*, 235 S.W.3d at 216. Diligence requires that she show that she "acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id*.

14

Diligence normally raises a fact question, but a plaintiff's explanation may show a lack of diligence as a matter of law "when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* To avoid dismissal (or, in a non-jurisdictional context, a take-nothing judgment), a plaintiff must "present evidence regarding the efforts that were made to serve the defendant, and to explain *every* lapse in effort or period of delay." *Id.* (emphasis added).

Tanner, however, has identified no disputed *fact* issue related to her exercise of diligence or anything else in connection with service—that is to say, she has identified no factual question that would be fit for presentation to a jury. Tanner's briefing, instead, makes three arguments to explain her delay, but each is susceptible only to legal analysis. Tanner cannot establish her diligence in service under any of these arguments, but the first of them nonetheless warrants remand to the court of appeals for resolution of a potentially dispositive legal question. We address her contentions in turn.

## A

Tanner first claims that service on Scott effectively *was* service on the University because of Scott's motion to substitute the University under § 101.106(f) of the Tort Claims Act.[2] Tanner invokes *University of Texas Health Science Center at San Antonio v. Bailey*, 332 S.W.3d 395 (Tex. 2011). That case involved the substitution of a governmental unit after limitations had run when, unlike in this case, the Baileys did not know that the individual defendant that they had sued, Sanders, was a

---

[2] The additional potentially dispositive issue of whether service on Scott was timely is not before us.

15

government employee. *Id.* at 401. Sanders waited until seven weeks after limitations had passed and then announced that his employer (another state university) should have been the defendant the whole time. *Id.* at 397. The employer then invoked limitations. *Id.* at 399.

Tanner contends that *Bailey* resolves the case for her because we held that the suit was not barred in that case. Under the Act, the Baileys' suit had been a suit against the employer *all along*. That is, "the Baileys' suit against Sanders was, in all respects *other than name*, a suit against the [state university]." *Id.* at 401–02 (emphasis added). We therefore held that the statute of limitations could not be a defense to the plaintiff's claims against the substituted employer. *Id.* We decline to resolve in the first instance whether or how the principles of *Bailey* affect this case. Unlike in *Bailey*, for example, Tanner named the University from the beginning and so had no need to later name a correct party, as § 101.106(f) provides and as the Baileys did. Tanner *could* have served every defendant at the time of filing but, purportedly for strategic reasons, chose *not* to do so.

Tanner's contention that, aside from any such distinctions, her service on Scott satisfies her obligation to serve the University presents a question of law. If she is correct that § 101.106 excuses her from separately serving the University, then her diligence in serving Scott, not the University, is the relevant inquiry. The parties in this Court, understandably enough, have paid far less attention to these details than to the issues that have been our focus in Part II of this opinion. We therefore decline to address this ground in the first instance.

16

**B**

Tanner next, and relatedly, claims that "[t]here was no delay in serving [the University] because [the University] had actual notice of Tanner's claim when the incident happened on October 4, 2014 and at least by the time Scott was timely served" in September 2018. This argument, while similar to her first, is mistaken. It confuses *service* with the Tort Claims Act's distinct *notice* requirement. *See* Tex. Civ. Prac. & Rem. Code § 101.101. Tanner asserts that "[i]f actual notice can satisfy a statutory prerequisite for 'notice', then surely it also satisfies a statutory prerequisite for diligent service." The contrary is true. Notice is a separate issue from whether service of process was performed at all, much less whether service was timely. Plaintiffs must separately satisfy both.

For example, in *Worsdale v. City of Killeen*, which Tanner cites, we held that "the undisputed evidence here conclusively establishes the governmental unit had actual notice it may be responsible for the deaths of two motorists whose vehicle struck an unbarricaded dirt mound completely blocking an unlit country road." 578 S.W.3d 57, 59 (Tex. 2019). Indeed—it was enough to satisfy § 101.101's *notice* requirement.

But actual notice does not fulfill the *service* requirement. Receiving a petition through means other than formal service, we have held, is an insufficient substitute for service. "Absent service, waiver, or citation, mere *knowledge* of a pending suit does not place any duty on a defendant to act." *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990) (emphasis added). In *Wilson*, we expressly distinguished between receipt and proper service. *Id.* If Tanner can establish that her service on Scott *constituted* service on the University (which is Tanner's first ground), then she does

not *need* to conflate notice and service (her second ground). But if her service on Scott does not amount to serving the University, any notice to the University is insufficient as a matter of law to satisfy her duty to timely effect service.

## C

Tanner finally claims that the University is at fault for not moving to dismiss Scott earlier pursuant to § 101.106, and that this delay excuses her own delay. This theory provides no basis to treat Tanner's late service as timely. By Tanner's own choice, the University had not even been served at this point, which meant that the University had no duty to act at all. *Wilson*, 800 S.W.2d at 837. The only way the University would have had such a duty was if the service on Scott constituted actual service on the University—which, again, is Tanner's first argument. Like her second theory, in other words, this one collapses into her first.

Tanner's argument that the same attorney represented Scott and the University is similarly unavailing. Common representation alone does not impose any duty on an unserved party. And even if this excuse were creditable, it could not explain the approximately two-year delay between serving Scott (2018) and serving the University (2020). Scott answered Tanner's suit in October 2018 and informed her that the University was his employer at the time of the accident. This excuse does not show diligence in service but indeed establishes the opposite.

\* \* \*

We therefore hold that Tanner has not established, and cannot establish, diligence in service on the University. But as we stated in Part II.A, diligence is not an independent requirement—it is only a

18

means to establish timely service. Tanner's first ground to defend timeliness does not rely on diligence in serving the University. Rather, it presents an alternative legal basis to deem satisfied any obligation to serve the University at all. That theory is underdeveloped in this Court. We leave it to the court of appeals, following supplemental briefing from the parties if that court deems it necessary, to determine in the first instance if Tanner's service on Scott excuses her from the duty to serve the University, diligently or otherwise. The court of appeals' judgment is reversed, and the case is remanded to that court.

Evan A. Young
Justice

**OPINION DELIVERED:** May 3, 2024

19