IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0340 
════════════
 
Ben Bolt-Palito Blanco 
Consolidated Independent School District, Petitioner,
 
v.
 
Texas Political Subdivisions 
Property/Casualty Joint Self-Insurance Fund, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued March 22, 
2006
 
 
Justice Willett, joined by Justice Hecht, dissenting in part.
I agree with 
most of the Court’s opinion, but respectfully dissent from Part II(D) because I 
do not believe that section 271.152 of the Local Government Code clearly and 
unambiguously waives the Fund’s governmental immunity.
I agree with 
the Court that the Fund is a discrete governmental unit performing a 
governmental function, and therefore possesses immunity from suit unless the 
Legislature has waived it. I also agree that the Fund is a “local governmental 
entity” under sections 271.151(3) and 271.152. However, I part company on 
whether the Legislature in 2005 clearly waived the Fund’s immunity for two 
principal reasons: (1) deciding whether a contract is “subject to this 
subchapter” requires this Court to actually see and read the contract, which 
exists nowhere in the record; and (2) even accepting Ben Bolt’s description of 
the contract, it falls outside the restrictive language of the statute’s 
immunity waiver (or at minimum does not “clearly and unambiguously” fall within 
it).
It is 
axiomatic that “a waiver of immunity must be clear and unambiguous,” Tooke v. 
City of Mexia, 197 S.W.3d 325, 333 (Tex. 2006), see also Tex. Gov’t Code § 311.034 (immunity 
waivers must be “effected by clear and unambiguous language”), and any ambiguity 
must be resolved in favor of retaining immunity, see Wichita Falls State 
Hosp. v. Taylor, 106 S.W.3d 692, 697 (Tex. 2003). As the Court’s opinion 
explains, the Legislature has waived immunity in certain contract actions 
against local governments. A contract subject to this limited immunity waiver is 
“a written contract stating the essential terms of the agreement for providing 
goods or services to the local governmental entity . . . .” Tex. Loc. Gov’t Code § 271.151(2) 
(emphasis added). As the parties describe the contract, however, this dispute 
does not concern a contract whereby Ben Bolt provided goods or services to the 
Fund, the entity claiming governmental immunity. Quite the opposite: the Fund 
provided goods or services to Ben Bolt.
Rightly or 
wrongly, the Legislature chose the preposition “to”—not the opposite term 
“from”—and this is a grammatical distinction with a difference. As any fax cover 
sheet (or elementary school valentine card) makes clear, the words have 
diametrically opposite definitions and convey diametrically opposite meanings; 
generally, the preposition “to” means “in a direction toward” while “from” means 
“in a direction away.” The core commodity covered by the agreement, casualty 
insurance, flows from the Fund, not to the Fund as the statute 
requires.
Certainly, 
reasonable people can argue that construing the statute as not providing a 
waiver of immunity impairs the purpose underlying the overall scheme, but we 
interpret statutory text as we find it. The clearest manifestation of what 
lawmakers intended is what lawmakers enacted, and it is not this Court’s role to 
embroider or spruce up statutory language, particularly when such embellishment 
requires us to read a term as really meaning the polar opposite. This is not an 
overly technical interpretation but one that recognizes the special deference 
owed legislative policy choices in the context of contract claims against the 
government, even if critics find those choices odd, unfair, or imprudent. 
Moreover, it is an interpretation that acknowledges the settled principle that 
immunity waivers must be unequivocal.
The Court 
relies principally on two arguments to scale the “to/from” hurdle. First, it 
avers that “the relationship between the Fund and its members differs from an 
ordinary consumer/seller relationship” and that because members like Ben Bolt 
“elect a governing board, and a board subcommittee resolves claims disputes,” 
the members do in fact provide services to the Fund. ___ S.W.3d ___, ___. The 
Court insists that this suffices to waive the Fund’s immunity, but in reaching 
to satisfy the definitional requirement of section 271.151(2), the Court 
disregards the actual waiver provision of section 271.152. This section waives 
immunity from suit “for the purpose of adjudicating a claim for breach of the 
contract,” Tex. Local Gov’t Code 
§ 271.152, and that contract must be one of providing goods or services 
to a local government entity, id. § 271.151(2). Ben Bolt’s ancillary 
activities may well be found in the Fund’s by-laws, as the Fund’s counsel 
surmised at oral argument, but neither Ben Bolt nor the Court cites any record 
evidence that shows these activities are prescribed by the insurance contract 
that Ben Bolt alleges was breached. Indeed, the sparse record in this case 
excludes the Interlocal Cooperation Contract, the Fund’s by-laws and any other 
pertinent documents that might describe in detail the parties’ contractual 
relationship. This is a breach of contract case, and when the statute waiving 
immunity requires that the contract specify “the essential terms of the 
agreement for providing goods or services to the local governmental 
entity,” id., it seems reasonable for the party alleging breach of that 
contract to produce it, not just describe it, particularly when its terms 
dictate whether immunity survives.
In any event, 
even if the described board- and claims-related activities were detailed in the 
insurance contract itself, these seem to be little more than oversight-related 
activities to help set up and maintain the Fund, and the Legislature has 
expressly preserved immunity for such functions: “[t]he establishment and 
maintenance of a self-insurance program by a governmental unit is not a waiver 
of immunity . . . .” Tex. Gov’t Code 
§ 2259.002; see also Tex. 
Gov’t Code §§ 2259.001(1)–(2) (defining “governmental unit” to include “a 
combination of political subdivisions, including a combination created under 
Chapter 791," the Interlocal Cooperation Act). Given these gaps and the 
governing statutory framework, it is difficult to conclude that section 271.152 
has clearly and unambiguously waived the Fund’s immunity from suit.
Second, the 
Court cites a House bill analysis to bolster its view that “to” should also be 
read to mean “from,” and concludes, “There is no indication that the Legislature 
intended to exclude self-insurance fund agreements from enforcement.” ___ S.W.3d 
at ___. There is such indication: the literal text that our elected 
representatives and senators enacted. As we recently cautioned in 
Sheshunoff, if the statutory text is plain, “we must take the Legislature 
at its word and not rummage around in legislative minutiae.” Alex Sheshunoff 
Mgmt. Servs. v. Johnson, ___ S.W.3d ___, ___n.4 (Tex. 2006). In any event, 
the bill analysis quoted by the Court offers such indication, too, in qualifying 
language found in the very same sentence; this language, omitted by the Court, 
is shown here in italics: “all local governmental entities that have been given 
or are given the statutory authority to enter into contracts shall not be immune 
from suits arising from those contracts, subject to the limitations set forth 
in C.S.H.B. 2039.”[1] House Comm. on Civil Practices, Bill 
Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005) (emphasis added). Even 
if the Legislature intended to waive broadly a local government’s immunity on 
contracts, it expressly recognized that terms and conditions within subchapter I 
itself would exclude some contracts from this waiver. One such limitation is 
section 271.151(2): the suit must be on a contract to provide goods or services 
to a local governmental entity.
At minimum, 
the Legislature’s selection of “to” instead of the directionally opposite “from” 
renders the purported waiver less than conclusive and a flimsy basis for holding 
that the Legislature has waived immunity beyond all doubt. More fundamentally, 
it is difficult to conclude with unalloyed certainty that a contract is “subject 
to this subchapter” and thus an undeniable waiver of immunity when the contract 
itself appears nowhere in the record.
In sum, the 
statute’s immunity language does not evince the Legislature’s unequivocal intent 
to cover this specific contract. Accordingly, since we must resolve 
uncertainties over legislative consent in favor of immunity, I would hold that 
the Legislature has not abrogated the Fund’s immunity from suit.
I find none 
of Ben Bolt’s other arguments for disregarding the Fund’s immunity persuasive 
and would affirm the judgment of the court of appeals.
 
_______________________________________
Don R. 
Willett
Justice
 
Opinion delivered: December 29, 
2006




[1] These dueling snippets of legislative history 
illustrate the peril of placing undue reliance on secondary materials. Anyone 
looking for a preferred interpretation can usually find a ready ally lurking in 
the legislative record, even if the statute’s literal text points the opposite 
direction. I do not reject out of hand the principled use of legislative history 
to unearth reliable guidance (unless the text’s plain language is unequivocal), 
Sheshunoff, ___ S.W.3d at ___, but it certainly merits a jurisprudential 
grain of salt. The enacted, voted-on text is what constitutes the law. We may 
not know the origin of a phrase tucked into a bill analysis, but we do know it 
is unwise to consider such materials a watertight index of the collective wishes 
of 181 lawmakers.