No. 15-25-00023-CV

ACCEPTED
15-25-00023-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/16/2025 12:20 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/16/2025 12:20:49 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

STATE OF TEXAS,

*Appellant*,

*v.*

NONPARTY PATIENT NO. 1, NONPARTY PATIENT NO. 2, NONPARTY PATIENT NO. 3, NONPARTY PATIENT NO. 4, NONPARTY PATIENT NO. 5, NONPARTY PATIENT NO. 6, NONPARTY PATIENT NO. 7, AND NONPARTY PATIENT NO. 8, NONPARTY PATIENT NO. 9, NONPARTY PATIENT NO. 10, AND NONPARTY PATIENT NO. 11,

*Appellees.*

On Appeal from the 95th Judicial District Court, Dallas County

## REPLY BRIEF FOR APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division

ABIGAIL E. SMITH
Assistant Attorney General
State Bar No. 24141756

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

Office of the Attorney General
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251
Tel: (214) 290-8830
Fax: (214) 969-7615

*Counsel for Appellant*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Table of Contents ....................................................................................ii

Index of Authorities ..............................................................................iii

Introduction............................................................................................ 1

Argument................................................................................................2

    I.    Sovereign Immunity Protects the State from this Cause of Action .............2

        A.   This case stems from a new cause of action, and is thus subject to sovereign immunity. .........................................................2

        B.   Sovereign immunity applies, and the *Hidalgo* framework is inapposite for this case. ...................................................................4

        C.   No statute affirmatively waives sovereign immunity for subpoena challenges against the State. ...............................................7

            1.   Texas Gov't Code § 22.0004(a) and Texas Rules of Civil Procedure 815 and 816 both confirm that sovereign immunity is not waived. ..............................................................8

            2.   Whether the Texas Rules of Civil Procedure contain a carveout provision is irrelevant to sovereign immunity. .................9

            3.   As explained in the State's opening brief, there is no implied waiver under *Wichita Falls State Hospital v. Taylor*......... 11

    II.   Non-party Patients Lack Standing to Challenge the Subpoena for the 10 Unrepresented Patients, and Standing Cannot Be Waived. ...........12

Prayer ................................................................................................... 14

Certificate of Compliance ................................................................... 14

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*,
669 S.W.3d 178 (Tex. 2023) ..................................................................... 4, 5, 6, 9

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) ..................................................................... 1, 3, 9, 10

*Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*,
925 S.W.2d 659 (Tex. 1996) ..................................................................... 12

*Russell v. Jones*,
49 F.4th 507 (5th Cir. 2022) ..................................................................... 7

*State v. Naylor*,
466 S.W.3d 783 (Tex. 2015) ..................................................................... 10

*Tex. Dep't of Transp. v. Sefzik*,
355 S.W.3d 618 (Tex. 2011) ..................................................................... 5, 6

*Tex. Office of Comptroller of Pub. Accounts v. Saito*,
372 S.W.3d 311 (Tex. App.—Dallas 2012, pet. denied) ..................................................................... 7

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003) ..................................................................... 8, 11

**Statutes**

Texas Gov't Code § 22.0004(a) ..................................................................... 8, 9

## Other Authorities

Tex. R. Civ. P. 176.6(e) ..............................................................................8, 9, 11

Tex. R. Civ. P. 192.6(a) ....................................................................................9

Tex. R. Civ. P. 815 ........................................................................................8, 9

Tex. R. Civ. P. 816 ........................................................................................8, 9

# INTRODUCTION

Nonparty Patients' brief gets a few things backwards. For example, when a private party files a new petition in a new court with new parties, that is a new cause of action, not merely a "privilege"—though of course a cause of action may *assert* a privilege. And when the State is entitled to sovereign immunity from a cause of action, that sovereign immunity derives from the common law and the State's inherent sovereignty, not from the Texas Rules of Procedure. That is why the Supreme Court has expressly held that even though the Rules apply to the State as a litigant, they have no bearing on "whether sovereign immunity protects the state from having to defend certain actions to begin with." *Nazari v. State*, 561 S.W.3d 495, 501 (Tex. 2018). Finally, standing is an issue that can never be waived, because like sovereign immunity, it implicates a court's subject matter jurisdiction.

Once those issues are cleared up, the ruling in this case is clear. Sovereign immunity protects the State from suit except in cases of clear and unambiguous waiver, and there is no waiver in any of the Rules or statutes that Nonparty Patients rely on. The State is immune from this suit, and the case should have been dismissed.

# ARGUMENT

## I. Sovereign Immunity Protects the State from this Cause of Action

### A. This case stems from a new cause of action, and is thus subject to sovereign immunity.

Many of Nonparty Patients' arguments stem from a fundamental misunderstanding about the nature of their case. They argue that because this case is a subpoena challenge, it is not a new cause of action, but rather merely an "assert[ion] of evidentiary *privilege*." Appellee's Br. at 13 (emphasis in original).

While that may have been true had Nonparty Patients chosen to file this challenge in Collin County, it is unequivocally false for a new cause of action filed in Dallas County. The lawsuit that this appeal stems from bears all the hallmarks of a new cause of action. It involves a new petition filed in a new court. There are new parties in this lawsuit (the Nonparty Patients, who, as their name suggests, are not a party to the Collin County lawsuit), and parties from the original Collin County lawsuit that are not party to this one—for example, Dr. Lau is not even a party here, and it is her medical records being sought. The Dallas County judge overseeing this matter has refused to heed rulings from the Collin County judge overseeing the Lau case, and the Collin County judge has similarly ordered discovery to proceed in her own case regardless of what the Dallas County judge ordered—thus creating the jurisdictional fight between two courts that has led to this and three other consolidated appeals before this Court. If it walks like a duck and talks like a duck, it probably is a duck—and likewise, this is a new cause of action.

This matters for several reasons. *First,* it makes clear that Nonparty Patients' decision to file a new cause of action, and *only* this, grants the State sovereign immunity from this Dallas County challenge. Had Nonparty Patients challenged the medical records subpoenas in Collin County, the State would not have claimed sovereign immunity because the State filed suit against Dr. Lau there and thus waived immunity for the purposes of that case. But because they filed a new cause of action where the State had *not* waived sovereign immunity, the State is immune from suit. *Second,* this matters because contrary to Nonparty Patients' arguments, *see* Appellee's Br. at 26–27, the Supreme Court's holding in *Nazari* that sovereign immunity is not waived in suits for civil penalties *does* apply here, as discussed below *infra* at section I.C.

*Third,* this matters because none of Nonparty Patients' claimed parade of horribles will come to pass from upholding the State's sovereign immunity in this case. Contrary to their argument, recognizing sovereign immunity will not "mean that most of the Rules of Civil Procedure and Evidence do not apply to the State." Appellee's Br. at 14. Rather, sovereign immunity protects the State *only* in isolated instances where a party chooses to file a new, unrelated cause of action against the State. The Texas Rules of Civil Procedure and Evidence continue to apply to the State where the State is a proper litigant, like they do in the Collin County lawsuit. But as the Supreme Court held in *Nazari*, *see infra* Section I.C.2 (discussing this holding in more detail), when the State cannot even be properly haled into court due to sovereign immunity, the case must be dismissed in its entirety regardless of what the Rules say.

## B. Sovereign immunity applies, and the *Hidalgo* framework is inapposite for this case.

The *Hidalgo* case relied upon by Nonparty Patients, *see Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178 (Tex. 2023), dealt with a very specific set of facts that are not present in this case, and thus the *Hidalgo* "framework" for sovereign immunity does not apply here. Indeed, *Hidalgo* never claims to apply to *all* cases. Because this case bears no similarities to *Hidalgo* and has much more in common with declaratory judgments, the default rule for such cases applies: Private suits against the State are subject to sovereign immunity, unless there is waiver.

In *Hidalgo*, one political subdivision (a water improvement district) brought an eminent-domain condemnation proceeding against another political subdivision (a water irrigation district). *Id.* at 181. The Supreme Court held that "sovereign immunity does not apply in eminent-domain proceedings and that the Irrigation District is not immune from the Improvement District's condemnation suit." *Id.* at 188. In so holding, the Court laid out the framework it used to determine whether sovereign immunity applied in that specific case, examining whether sovereign immunity in eminent-domain proceedings would "(1) protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments and (2) preserv[e] the separation of powers and the Legislature's prerogative to apportion tax dollars to their intended purposes." *Id.* at 183. The Court further noted that the State of Texas has a long history of "resolv[ing] issues arising from the condemnation of land already dedicated to a public use, including publicly-owned land, by

4

applying the paramount-public-importance doctrine," including applying this doctrine "to condemnation suits against political subdivisions." *Id.* at 184–85. Thus, because of the long history of allowing such suits, the Court held that the lawsuit could go forward.

However, it is an overreading of *Hidalgo* to hold that sovereign immunity *only* applies to suits that implicate the public fisc and that reapportion tax dollars from their intended purposes. Indeed, the Supreme Court has expressly held that "[w]hile the doctrine of sovereign immunity *originated* to protect the public fisc from unforeseen expenditures that could hamper governmental functions, it has been used to shield the state from lawsuits seeking other forms of relief." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (emphasis added).

Take declaratory judgment suits, for example. While declaratory judgment suits *can* implicate monetary relief, by and large they do not. Yet the State is still immune from suits under the Uniform Declaratory Judgment Act "unless the Legislature has waived immunity for the particular claims at issue." *Id.* at 620. For example, in *Sefzik*, a man sued the Texas Department of Transportation under the UDJA seeking a declaration that he was entitled to a hearing on the denial of his sign permit. *Id.* This did not involve the payout of "money judgments," nor did the lawsuit implicate "the separation of powers and the Legislature's prerogative to apportion tax dollars." *Hidalgo*, 669 S.W.3d at 183. Rather, it was a simple sign dispute. Nevertheless, the Supreme Court held that sovereign immunity applied. That is because *Hidalgo* laid out a framework that *can* guide whether sovereign immunity applies in a suit

5

between two governmental units. But it does not set a threshold that *must* be met for sovereign immunity to apply in every case.

*Hidalgo*'s own language supports this more limited reading. For example, it states that the default position generally is sovereign immunity when the State is sued. *See id.* at 182 ("Sovereign immunity generally bars lawsuits against the State absent legislative consent to be sued."). The opinion further states that "shield[ing] the public from the costs and consequences of improvident actions of their governments" is "an important purpose" of sovereign immunity. *Id.* at 186 (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). But it does not state that that is the *only* purpose of sovereign immunity. *Cf. Sefzik*, 355 S.W.3d at 621 (noting that sovereign immunity "has been used to shield the state from lawsuits seeking other forms of relief" than just the public fisc).

Comparing the facts of this case to *Hidalgo*, it is clear that the *Hidalgo* framework is inapposite. That case involved two governmental entities suing each other over eminent-domain, which has a long history of being litigated in Texas courts *without* sovereign immunity. By contrast, this cause of action involving Nonparty Patients is much more traditional: A private party has sued the State seeking an order to prevent the State from doing something (obtaining medical documents), and there are no claims that the State's actions are *ultra vires*. While the lawsuit does not seek money[1],

---

[1] Even if this case were analyzed under the *Hidalgo* framework, it is clear that the Nonparty Patients' choice of venue has dramatically increased litigation costs for this case far beyond the State's expectations, contrary to their assertions. *See* Appellee's Br. at 23. By virtue of the jurisdictional crisis between Collin and Dallas County courts that Nonparty Patients have engineered, the State has been forced to engage

it does seek a declaration that the State may not receive medical records under the law, which is akin to a declaratory judgment action seeking a declaration that something is illegal under the law.

Furthermore, there is no established history of litigating these kinds of cases in Texas because so far as both parties can tell, this case is the first of its kind in Texas state court. *See* Appellee's Br. at 25 (noting that their review of the case law did not turn up a single case that applied or rejected sovereign immunity in a discovery dispute involving the State). However, cases on the *federal* level have held that sovereign immunity does apply to discovery disputes, including subpoena challenges. *See, e.g.*, *Russell v. Jones*, 49 F.4th 507, 513–14 (5th Cir. 2022) (holding that sovereign immunity attached to third-party subpoenas against state government officials); *see also id.* at 519 (holding that history and cases at common law did not conflict with a holding that sovereign immunity attaches to third-party subpoenas). Sovereign immunity applies here, and there has been no waiver.

## C. No statute affirmatively waives sovereign immunity for subpoena challenges against the State.

Contrary to Nonparty Patients' claims, there is not a single statute, rule, or code that affirmatively waives sovereign immunity for the subpoena challenges against the State. *Cf. Tex. Office of Comptroller of Pub. Accounts v. Saito*, 372 S.W.3d 311, 313 (Tex. App.—Dallas 2012, pet. denied) ("The State and its agencies enjoy sovereign

---

in several weeks of emergency late-night briefing, respond to various emergency stay requests, and file or respond to numerous mandamus petitions that would not have arisen had this challenge been filed in Collin County.

7

immunity from suit and from liability unless the legislature expressly waives that immunity."). Appellees concede that the relevant Rule at issue, Rule 176.6(e), "does not contain any 'magic words' specifically waiving immunity." Appellee's Br. at 27. Instead, at various times throughout its brief Nonparty Patients alternatively argue that the Texas Government Code and the Rules themselves disclaim sovereign immunity; that sovereign immunity is waived by mere virtue of the State being subject to the Rules at all, *id.* at 10–14; and that the Legislature implicitly waived sovereign immunity under a four-factor test set forth in *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003), Appellee's Br. at 27–31. None of these are correct—rather, because the Legislature has unambiguously *not* waived sovereign immunity, it applies to this case with full force.

1. **Texas Gov't Code § 22.0004(a) and Texas Rules of Civil Procedure 815 and 816 both confirm that sovereign immunity is not waived.**

In a rare show of unity, the parties seem to agree that Texas Government Code section 22.0004(a) and Texas Rules of Civil Procedure 815 and 816 prevent the Texas Rules of Civil Procedure from being used to abridge or modify sovereign immunity, or to extend or limit the jurisdiction of the courts. *See* Appellee's Br. at 15. But Nonparty Patients appear to misunderstand the true implications of this argument. Because the Rules cannot alter sovereign immunity, they cannot be relied upon to waive or abridge sovereign immunity where it otherwise applies.

The State has sovereign immunity from causes of action filed by private parties absent an express waiver from the Legislature. *See supra* Section II.B, *infra* Section

II.C.3. This immunity does not come from the Rules; rather, it derives from the common law and the State's inherent sovereignty. Yet Nonparty Patients argue that the Rules preclude the application of sovereign immunity in a case where it would otherwise apply, simply because Rules 176.6(e) and 192.6(a) authorize a subpoena challenge. That is the exact type of argument prohibited by Texas Government Code section 22.0004(a) and Texas Rules of Civil Procedure 815 and 816. To permit this argument would "abridge . . . the substantive rights of" the State, Tex. Gov't Code § 22.0004(a), "diminish [the] substantive rights" of the State, Tex. R. Civ. P. 815, and "extend . . . the jurisdiction of the Courts of the State of Texas" to a case where it otherwise would lack jurisdiction, Tex. R. Civ. P. 816. Because the Nonparty Patients' arguments in this regard rely on the Rules to abrogate the State's sovereign immunity and extend the courts' jurisdiction, they must be rejected.

Additionally, it is unclear what Nonparty Patients are getting at when they argue that "the Court cannot use the Rules as a substantive source for determining its subject matter jurisdiction." Appellee's Br. at 15. The State has never argued that the Rules determine jurisdiction over this case—rather, *regardless* of the Rules, sovereign immunity applies. And sovereign immunity from suit, which is at issue here, is always "properly raised in a plea to the jurisdiction." *Hidalgo*, 669 S.W.3d at 182; *cf.* Appellee's Br. at 15 (arguing this could have been raised as an affirmative defense).

2. **Whether the Texas Rules of Civil Procedure contain a carveout provision is irrelevant to sovereign immunity.**

Whether the Rules apply to the State in litigation is irrelevant, because in *Nazari*, the Supreme Court held that the Rules cannot be used as a basis to overcome

9

sovereign immunity. It is blackletter law that as a matter of ordinary course, when the State is a litigant, it is subject to the same Rules of Civil Procedure and Evidence as any other litigant, absent an express carveout provision. The State does not dispute this—indeed, it is complying with the Rules of Civil Procedure and Evidence in the Collin County Lau matter, where the State has waived sovereign immunity.

But in *Nazari v. State*, 561 S.W.3d 495 (Tex. 2018), the Supreme Court held that the Rules cannot be used to abrogate sovereign immunity where it otherwise exists. In *Nazari*, the private plaintiffs argued that the Attorney General waived sovereign immunity to related causes of action by filing its original suit, because "when the state becomes a party to a suit it is subject to the same rules that govern other parties." *Id.* at 500–01 (cleaned up). The State disagreed, arguing that "while the state may be bound to follow certain procedures when it appears in court, . . . procedural rules cannot waive the state's immunity." *Id.* at 501.

The Supreme Court agreed with the State. It expressly held that the cases cited by plaintiffs, including cases relied upon by Nonparty Patients like *State v. Naylor*, 466 S.W.3d 783 (Tex. 2015), "stand simply for the proposition that procedural rules apply to the state just as they would to any other litigant when the state appears in court. That proposition, though sound, does not answer the question whether sovereign immunity protects the state from having to defend certain actions to begin with." *Nazari*, 561 S.W.3d at 501.

In sum, the mere fact that the Rules apply to the State is not sufficient to overcome sovereign immunity. Cases like *Naylor* are therefore irrelevant to the sovereign immunity analysis.

### 3. As explained in the State's opening brief, there is no implied waiver under *Wichita Falls State Hospital v. Taylor*.

The State has already explained at length in its opening brief why the four factors to show implied waiver of sovereign immunity do not apply here. *See* Appellant's Br. at 11–13 (discussing *Wichita Falls*, 106 S.W.3d 692). None of Nonparty Patients' arguments to the contrary hold weight. Indeed, many of their arguments implicitly acknowledge that the factors weigh in *favor* of sovereign immunity. For example, Nonparty Patients concede that "the Rule [176.6(e)] does not require the State to be joined in every proceeding," Appellee's Br. at 29—indeed, it makes no mention of the State. But to show implied waiver of sovereign immunity, the statute at issue must "require[] that the State be joined in a lawsuit," such as where the Declaratory Judgments Act "authoriz[es] declaratory judgment actions to construe the legislative enactments of governmental entities and authoriz[es] awards of attorneys fees." *Wichita Falls*, 106 S.W.3d at 697–98 (quoting *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994)). Similarly, Nonparty Patients concede that *Wichita Falls* finds support for implied waiver when a law contains "simultaneous measures that insulate public resources from the reach of judgment creditors, such as statutory caps or limitations on liability." Appellee's Br. at 30. But Nonparty Patients never argue that Rule 176.6(e) contains any such caps or liability limitations.

The main holding of *Wichita Falls* is that implicit waiver of sovereign immunity is "rare," and can only be found in very extreme circumstances. *Wichita Falls*, 106 S.W.3d at 697. None of those circumstances are present here. There is no waiver, and sovereign immunity applies.

## II. Non-party Patients Lack Standing to Challenge the Subpoena for the 10 Unrepresented Patients, and Standing Cannot Be Waived.

Nonparty Patients raise two arguments to defend against their suit on behalf of unrepresented patients: First, they argue they did not seek relief for the unrepresented patients at all; and second, they argue the issue of standing is waived because the State did not raise it below.

Taking these arguments in reverse, it is blackletter law that standing is a jurisdictional requirement that cannot be waived and can be addressed by a court *sua sponte* at any point on appeal. *See, e.g. Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) ("Although Nootsie never raised standing at trial, it may raise the issue on appeal for the first time because standing implicates the trial court's subject matter jurisdiction.").

With regard to the first argument, Nonparty Patients' second amended petition (the operative petition in this case) clearly *does* seek relief for the ten unrepresented patients. For example, the petition requests that the court "enter an order preventing the Hospital Systems from producing the materials sought in the Subpoenas"—not just the materials sought from Nonparty Patients. CR.237 ¶ 9. Later, Nonparty Patients request the ability to review "*any* proposed productions from the Hospital Systems"—not just productions for their own patients. CR.240 ¶ 16 (emphasis added); *see also* CR.242 ¶¶ 19–20 (similar). This would likely be a HIPAA violation in itself, since Nonparty Patients' counsel have no right to review the medical records of patients they do not represent. The Dallas court clearly understood Nonparty Patients' request to encompass relief for all 21 patients, because its improperly

issued stay order blocked "any and all production obligations with respect to the State's subpoenas," and ordered UTSW and Children's to "not produce *any* documents to the State" pending appeal—not just the documents related to the 11 Nonparty Patients. CR.402.

Furthermore, Nonparty Patients never alleged their medical records may be commingled with those of the 10 unrepresented patients.[2] Not once does the second amended petition or the attached declaration suggest that any records among patients may be commingled, or that the production of the unrepresented patients' records "will implicate the represented patients." Appellee's Br. at 32. Rather, this is a factual contention that Nonparty Patients have raised for the first time on appeal. Nonparty Patients had no basis to challenge production of their records, and any such requests should be dismissed.

---

[2] Nonparty Patients did claim commingling of some records in the Collin County Lau case, *see* 15-25-00031-CV, but that has since been disproven, as explained in the State's brief opposing mandamus relief in that case.

## PRAYER

The Court should reverse the district court's denial of the State's plea to the jurisdiction and direct the district court to dismiss the case for lack of subject-matter jurisdiction.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division

*/s/ Abigail E. Smith*
ABIGAIL E. SMITH
Assistant Attorney General

ROB FARQUHARSON
Assistant Attorney General

Office of the Attorney General
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251
Tel: (214) 290-8830
Fax: (214) 969-7615

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this document contains 3,557 words, excluding exempted text.

*/s/ Abigail E. Smith*
ABIGAIL E. SMITH

14

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Abigail Smith
Bar No. 24141756
pauline.sisson@oag.texas.gov
Envelope ID: 100932219
Filing Code Description: Brief Requesting Oral Argument
Filing Description: 20250516 States Reply Brief
Status as of 5/16/2025 12:30 PM CST

Associated Case Party: Nonparty Patient No. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Logan | 24106214 | wlogan@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Evan Lewis | 24116670 | edlewis@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Jervonne Newsome | 24094869 | jnewsome@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Thanh Nguyen | | tdnguyen@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Olivia Wogon | | owogon@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Jonathan Hung | | JOHung@winston.com | 5/16/2025 12:20:49 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| David Phillips | | DPhillips@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Jamie Vargo | | JVargo@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 5/16/2025 12:20:49 PM | SENT |
| Hollie Albin | | hmalbin@winston.com | 5/16/2025 12:20:49 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David G. Shatto | | david.shatto@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Abigail Smith
Bar No. 24141756
pauline.sisson@oag.texas.gov
Envelope ID: 100932219
Filing Code Description: Brief Requesting Oral Argument
Filing Description: 20250516 States Reply Brief
Status as of 5/16/2025 12:30 PM CST

Associated Case Party: State of Texas

| Rob Farquharson | | rob.farquharson@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
|---|---|---|---|---|
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 5/16/2025 12:20:49 PM | SENT |